ABNER PYLE *et al.*

*v.*

BARBARA OUSTATT *et al.*

| 92 | 209 |
| 180 | 406 |
| 92 | 209 |
| 206 | 1222 |

1. INTERLINEATIONS AND ERASURES—*must be explained.* In an action of ejectment the plaintiffs, who were husband and wife, relied upon a deed which the evidence showed, as originally drawn by the scrivener, was in form a conveyance to the husband alone, and was subsequently, by interlineations and erasures, so changed as to make it in form a deed to the husband and wife. It was *held*, the deed, when offered in evidence, being in this condition, it devolved upon the plaintiffs to satisfactorily account for the interlineations and erasures before the jury would be warranted in regarding it as a valid deed.

2. WITNESSES—*competency—party to suit.* The defendant in an action of ejectment defended simply as the *heir* of his father, and not under any conveyance from him, so it was held that under the second section of the act of 1867 concerning the competency of witnesses, the plaintiff in the suit was not a competent witness in his own behalf, the case not falling within any of the exceptions in that section.

3. The rule under the statute that where one sues or defends as heir, devisee, etc., no adverse party, or party having an interest in the event of the suit, can, on his own motion, testify, applies to all persons alike, whether such adverse parties proposing to testify hold the relation of husband and wife or otherwise;—and there is nothing in the fifth section of the act, which has reference to the competency of husband and wife as witnesses for or against each other, that will, in any case, have the effect of rendering one competent as a witness, who is incompetent under the first and second sections.

14—92 ILL.

4. Same—*as to husband and wife.* Where husband and wife, as plaintiffs in ejectment, seek to recover under a deed conveying the land to both of them, such deed being made prior to the Married Woman's act of 1861,[*] the wife can not invoke the fifth section of the act of 1867 concerning the competency of witnesses, as rendering her a competent witness because of the litigation being in reference to her separate property, for in such case neither the husband nor the wife has any separate property in the land, they being seized as one person of the whole estate or as tenants by entirety.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding.

Messrs. Metcalf & Bradshaw, for the appellants:

As to the proper rule in regard to the explanation required where there are alterations found in an instrument offered in evidence, by interlineations, see *Walters* v. *Short*, 5 Gilm. 258; *Hodge* v. *Gillham*, 20 Ill. 442; *Montag* v. *Linn*, 23 id. 556.

If the deed to Abner Pyle and wife was a valid deed, then the deed to Andrew Pyle, by Abner Pyle alone, would be a nullity, for the deed being before the act of 1861, and to the husband and wife, each would be seized of an entirety. *Mariner* v. *Saunders*, 5 Gilm. 124; *Lux* v. *Hoff*, 47 Ill. 425; *Strawn* v. *Strawn et al.* 50 id. 33; *Harrer et al.* v. *Wallner*, 80 id. 197.

Messrs. Gillespie & Happy, for the appellees.

Mr. Justice Mulkey delivered the opinion of the Court:

Abner Pyle, and Naomi Pyle, his wife, on the 19th day of September, 1877, commenced an action of ejectment in the Madison circuit court, against Henry Pyle, Hiram Pyle, Barbara Oustatt and Adolph Spinner, for the recovery of seventy acres off the west side of the north-west quarter of section 26,

---

[*]In the case of *Cooper et al.* v. *Cooper et al.* 76 Ill. 57, it is held that under the act of 1861, giving to married women the right to acquire property, and hold the same free from their husband's control, the reason for the rule which, at common law, held that a conveyance to husband and wife made them tenants by the entirety with right of survivorship, has ceased to exist, and they will, in this State, take and hold under such conveyance as tenants in common.

township 3 north, range 6 west, in Madison county. The defendants Henry and Hiram are the sons and heirs-at-law, and Barbara the late widow of Andrew Pyle, deceased, who was the son of Abner Pyle. Henry and Hiram are the real parties in interest, the other two defendants being mere formal parties.

At the October term of the court following, by consent of parties, the cause was submitted to the court without the intervention of a jury. The court found the issue for defendants, and, upon motion of plaintiffs, awarded a new trial under the statute. At the following March term there was another trial of the cause before the court and a jury, which also resulted in favor of defendants. A motion for a new trial was heard and overruled, and final judgment entered by the court upon the verdict of the jury. Appellants thereupon took an appeal to this court, and now assign for error on the record that the court below rejected proper evidence for appellants, admitted improper evidence for appellees, gave improper instructions for appellees, that the verdict is contrary to the law and the evidence, and that the court erred in overruling a motion for a new trial and in rendering judgment for appellees. Both parties claim title through James Lemen, Jr., and Roxana Lemen, his wife, and Joseph L. Kingston.

On the trial below appellants offered in evidence a deed from the above mentioned parties to themselves for the land in controversy. The deed bore date August 28, 1858, and upon the face of it there were a number of erasures and interlineations. Upon objection being made to the introduction of this deed in evidence on account of the interlineations and erasures, appellants examined a number of witnesses with a view of explaining them, after which the same was allowed to go to the jury against the objections of appellees, and thereupon appellants rested their case.

Appellees, for the purpose of proving the issue on their side, put in evidence, against the objections of appellants, a deed for seventy acres off the west side of the above mentioned quarter section of land, bearing date June 6, 1868, from ap-

pellant Abner Pyle to his son Andrew Pyle above mentioned, for the expressed consideration of $5 and love and affection. Appellees also introduced as a witness James L. D. Morrison, who, among other things, testified, in substance, that appellant Abner Pyle, in 1857, claimed to be the owner of the land in controversy and exhibited to him a deed for it, and that the deed then exhibited to him was not the deed offered in evidence by appellants; that at the time, he regarded Pyle's title good and took from him a mortgage which Pyle subsequently paid. Appellees here rested.

Appellants base their right of recovery upon the theory, that by reason of the deed of Lemen and wife and Kingston having been made to appellants while the relation of husband and wife existed between them, they became tenants *by entirety*, or as it is sometimes expressed, by entireties, and as such, neither could convey any interest in the premises to another without both joining in the deed. Appellees seem to acquiesce in this view of the law, but insist, by way of defence, that the deed relied upon by appellants was not originally made to them jointly, but on the contrary, was made to Abner Pyle alone, and that the same after its delivery was so altered as to make it appear to be a conveyance to them both, and that inasmuch as it is manifest from a mere inspection of the instrument that it was altered at some time or other, it devolved on appellants to account for the alterations in such a manner as would relieve the deed from all suspicion and be consistent with the operation and effect which appellants seek to give it.

Without expressing any opinion as to the soundness of the position taken by appellants and acquiesced in by appellees as to the effect of the conveyance of the husband alone, and waiving all inquiry as to whether Abner Pyle is not estopped by his deed to Andrew Pyle from prosecuting this suit, we will proceed to consider the case on the grounds upon which the parties themselves have placed it.

The most important question involved in the controversy, which the parties themselves have raised on the argument, is

one of fact rather than law.    It is:    Were the interlineations
and erasures appearing upon the face of appellants' deed, from
Lemen and wife and Kingston, made subsequently to its de-
livery?

It appears, from the evidence, beyond doubt, that this deed
as originally drawn by the scrivener, was, in form, a con-
veyance to Abner Pyle alone; and that it was subsequently,
by interlineations and erasures, so changed as to make it, in
form, a deed to Abner Pyle and wife.    The instrument when
offered in evidence being in this condition, it clearly devolved
upon appellants to satisfactorily account for the interlineations
and erasures before the jury would be warranted in regarding
it as a valid deed.    Was this done?    The jury, under the in-
structions of the court, of necessity must have found it was
not.

For the purpose of explaining these alterations apparent
upon the face of the deed, appellants introduced and exam-
ined three witnesses, viz: Lemen, Greenwood, and Hall, and
after a somewhat careful examination of their testimony we
are unable to say that the conclusion reached by the jury was
wrong, at any rate it is not manifestly so.    None of these wit-
nesses pretend to know *when* these alterations in the deed were
made, or *where* they were made.    The weight of evidence
shows they were made by the same hand that wrote the original
deed, but this fact is of but little importance unaccompanied
as it is by any explanation as to when, where, or by whose
authority the alterations were made; and it is a significant
fact that Miller, who wrote the deed and made the alterations,
was not called as a witness or his absence accounted for.
Probably he was dead, but if so, that fact should have been
shown.    The testimony of Greenwood and Hall also has but
little if any bearing at all upon the vital question, when, where,
or under what circumstances were these alterations made?
And, indeed, the testimony of Lemen himself, when considered
as a whole, is but little more satisfactory, if any at all, than
that of Greenwood and Hall.    It is true, in his examination

in chief, when speaking of the deed and its execution, he uses this language: "The deed was to Pyle and wife and is now just as it was when it was executed, acknowledged and delivered by us, *according to my best recollection.*" But he shows upon his cross-examination that his "best recollection" was scarcely any recollection of the transaction whatever. He says: "Don't remember where this deed was drawn up. * * * Don't remember these alterations in this deed; have no recollection of seeing them at the time the deed was signed. Can't say whether this deed read, 'and Abner Pyle of the county and State aforesaid,' or 'Abner Pyle and wife of the county and State aforesaid;' it might have been one or the other. * * * There are several other erasures I can see by holding the deed up between me and the light, but I have no recollection as to when they were made or how they came to be made; *in fact I have no recollection aside from the deed itself.*"

These statements, when all considered together, show conclusively that the witness, at the time of testifying, really had no recollection whatever of the transaction about which he was speaking, further than the mere fact of executing the deed. He saw the signatures of himself and wife and recognized them, and perhaps remembered the fact of making a deed, but that was all. This, however, furnishes no explanation of the confessed alterations in the deed, nor did it tend to show that they were made at or before the time of its execution. The weight of the evidence shows that these alterations were made with a different ink from that in which the deed was originally written, and one of the witnesses thought three different inks had been used on the deed, and one of appellants' own witnesses gives it as his opinion that the words "of the," interlined between "wife and county," looked *newer* than the rest. In fact, the weight of the evidence shows that these alterations appeared fresher than the other portions of the deed.

Now, in the light of these facts, and in the absence of any satisfactory explanation of the condition of the deed when

offered in evidence, we are at a loss to see how the jury could have reached any other conclusion than that which they did, and we are of opinion, therefore, they were fully warranted in disregarding, as they did, the instrument as a deed to Abner Pyle and wife; and with this fell the whole theory upon which appellants claimed a right of recovery,—for if the deed was originally made to Abner Pyle alone, and it was subsequently so altered by the grantee or a stranger as to make it in form, as it was, a deed to Abner Pyle and wife, it is evident that the wife took no interest in the premises conveyed, except a mere inchoate right of dower, and that whatever title Abner Pyle acquired under it was conveyed by him to Andrew Pyle, by virtue of his deed of June 6, 1868.

It was proposed upon the trial to show, by Abner Pyle, and Naomi Pyle, his wife: 1. When, where and by whom the alterations in the deed were made; 2. To show that the alterations were made by the justice when the deed was executed and delivered; 3. To show that the reason why the wife's name was put in the deed was because she advanced the money to pay for the land out of her separate property. And it was further proposed to show, by Abner Pyle alone, that the deed in question was the same deed under which he made the deed to his son, Andrew Pyle. Upon objection to the competency of these witnesses to prove the facts proposed, the court refused to allow them to testify, and it is now earnestly urged that the court, in thus ruling, erred.

By the common law, parties to the suit, and all persons having a direct interest in its result, were excluded as witnesses. It was also a rule of the common law that husband and wife could not testify for or against each other, nor could they testify to communications between each other, or to any fact or transaction the knowledge of which was obtained by means of the marital relation. *Reeves* v. *Herr*, 59 Ill. 81.

To these general rules there were certain exceptions, unimportant to notice here, as they have no bearing upon the question we are considering. The rules themselves, however, were of

constant and general application, and constituted a part of the law of this State until 1867, when the legislature passed an act almost abrogating the one and radically changing the other. The act of 1867 is substantially the same as our present statute on the subject. By the first section of that act it is provided, in general terms, that no person shall be disqualified as a witness in any civil action, suit or proceeding by reason of being a party to the suit or otherwise interested in its event, or by reason of having been convicted of any crime. The second section provides, in substance, that no person shall, by virtue of the first section, be permitted to testify on his own motion in any civil suit or proceeding, where the adverse party sues or defends as *heir*, devisee, etc., except in certain specified cases.

Henry and Hiram Pyle, the real parties in interest in this suit, are defending as heirs of Andrew Pyle, and hence the plaintiffs had no right to testify under the first section of the act, unless the case falls within some of the exceptions in the second section, and there is certainly no ground for any claim of that kind. Indeed, appellants do not claim to have any right to testify under the first section of the act.

But appellants insist that Naomi Pyle had the right to testify under the fifth section of the act in question. That section, or so much of it as may be supposed to have any bearing on the question before us, provides that "no husband or wife shall, by section one of this act, be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marriage or after its dissolution, except in cases where the wife would, if unmarried, be plaintiff or defendant, * * * or where the litigation shall be concerning the separate property of the wife." We see nothing in this section looking to the view contended for by appellants. There is, indeed, nothing in the fifth section that will, in any case, have the effect of rendering one competent as a witness who is incompetent under the first and second sections. Where one is suing or defending as heir, devisee, etc., no adverse

party or party having an interest in the event of the suit can, on his or her own motion, testify, and it is wholly immaterial whether such adverse party is married or single,—the rule applies to all persons alike. But this rule is not always true *e converso*, for it often happens, in suits where husband and wife are parties, that one or both of them might be competent witnesses under the first and second sections, and yet incompetent to testify by reason of some other common law restriction not falling within the exceptions in the fifth section.

But even if appellants were correct in their construction of the act, their application of it is evidently wrong. There is no controversy, here, about the *separate* property of the wife, but, on the contrary, the whole theory of appellants' right of recovery rests on the hypothesis that the husband and wife are seized as one person of the whole estate, and that she could not recover without his recovering, and that whatever testimony promotes her success equally promotes his.

But it is urged by appellants that the facts proposed to be proved by their own testimony were not on the merits, but merely preliminary to the introduction of the deed. If counsel mean by this that the evidence offered was for the court only, to be considered in determining whether the instrument in its then condition should go to the jury at all or not, then it is manifest that appellants were not injured by the action of the court in excluding them as witnesses for that purpose,—for the court, upon the testimony of the other witnesses, allowed the deed to go to the jury, and if their testimony was only to be used for this preliminary purpose, it was not at all needed, as the admission of the deed without it abundantly proves.

The facts proposed to be proved by appellants, however, were not of the preliminary character claimed. They looked directly to the merits of the case. To have permitted appellants to establish these facts in the manner proposed, would have been to have allowed them by their own testimony to establish a fact upon which their entire case depended. What was the great fact to be established by appellants in order to en-

title them to recover? Evidently that the deed under which they claimed was in . form and substance the same as when originally delivered,—or, in other words, that it was genuine; and its genuineness could only be established by proving that the erasures and interlineations were made at or before its delivery,—the very thing which appellants proposed doing by their own testimony.

In *Ely* v. *Ely*, 6 Gray, 439, the court, in discussing this subject, say: "The burden is on the party offering the instrument to prove its genuineness, and that the alterations apparent on the same were honestly and properly made."

So in this case, the burden was on appellants to establish the genuineness of the deed by showing that the alterations were honestly and properly made. But this could not be done by the testimony of appellants themselves. They were not competent for that purpose, and the circuit court therefore properly refused to allow them to testify. If the view here taken is correct, appellants were not entitled to recover, whatever may have been the instructions of the court, and it is therefore unnecessary to determine whether any error was committed in giving the instructions, or not.

We are also of opinion that the court committed no error in refusing to grant a new trial, either under the statute or otherwise.

Seeing no cause for a reversal of the case, the judgment of the court below must be affirmed.

*Judgment affirmed.*