CHARLES C. LANDT et al.

*v.*

JAMES C. McCULLOUGH.

*Opinion filed December 16, 1903.*

1. EVIDENCE—*when alterations in lease should be explained by party offering it.* Alterations, interlineations and erasures in a lease which change the legal effect and operation of the instrument and the liability of the parties, should be explained by the party seeking the benefit of the lease before it is received in evidence.

2. SAME—*when admission of lease in evidence is error.* Admitting a lease in evidence after allowing leave to amend the declaration so as to make the copy set out therein *in hæc verba* correspond with the lease offered in evidence is error, when no amendment was in fact made to obviate the variance.

3. SAME—*when secondary proof of writing should not be admitted.* The secondary proof of written documents should not be admitted

when there is no showing, beyond the mere statements of counsel, that a notice was served upon the opposite party to produce the originals, nor that such party had ever had them in his control.

4. SAME—*what not proof that a lease was assigned in writing.* A recital in a bond given by the defendants which states that a lease (describing it) was "assigned" to such defendants by the lessee, is not proof of an allegation in the declaration that such lease was assigned *in writing.*

5. SAME—*what does not establish written assignment of lease and written consent.* Drafts of a proposed assignment of a lease by the lessee and of a proposed consent thereto by the lessor, neither of which is signed, do not establish a written assignment and consent.

6. NEW TRIAL—*when remark of counsel does not waive grounds of motion.* If the bill of exceptions shows a motion for a new trial, supported by written reasons, and that such motion was overruled and exception taken thereto, such written reasons are not waived by the jocular remark of the counsel to the effect that he would not urge his reasons for fear the court would grant a new trial.

7. SAME—*right of party to file written reasons in support of motion for new trial.* Written reasons in support of a motion for a new trial may be filed during the term at which judgment is entered, notwithstanding the court has previously overruled a verbal motion without allowing time to file such reasons.

*Landt* v. *McCullough,* 103 Ill. App. 668, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is an action in assumpsit, commenced on January 18, 1901, in the superior court of Cook county by the appellee against the appellants, Charles C. Landt and Will H. Moore, upon a lease, dated March 20,.1889, alleged to have been made by the appellee to one James M. Stebbins, leasing certain premises therein described for a term of fifty years from the first day of May, 1889, and ending the 30th day of April, 1939, at an annual rental of $1050.00, payable in equal quarterly installments of $262.50 each on the first days of August, November, February and May in each year for the first sixteen years. The lease describes the premises therein leased as being

in the town of Lake in Cook county, and contains, among other covenants, a covenant for the erection of buildings on the premises by the lessee.

The declaration charges that, "on the 20th day of March, A. D. 1889, the plaintiff and one James M. Stebbins entered into a certain instrument in writing, commonly called a lease, and bearing date of that day, a copy of which is in words and figures as follows, to-wit:" The declaration then sets forth *in hæc verba* the copy of an unexecuted lease, that is to say, a copy, which does not appear to be signed by either of the parties named in the body of the lease. The declaration further avers that afterwards, on October 12, 1892, Stebbins assigned, transferred, conveyed and set over to the defendants below, the appellants here, Landt and Moore, all his title, interest, claim and demand in, under and to said instrument in writing; and that the plaintiff below, appellee here, McCullough, consented to said assignment in accordance with the terms of said instrument in writing. The declaration further sets forth that the defendants entered into possession of the premises, described in said instrument in writing, and undertook and promised to pay the plaintiff, his heirs or legal representatives, the yearly rent at the times aforesaid; and that, during the first sixteen years of the term thereby granted, to-wit, on January 17, 1900, $5000.00 of the rent, accrued from the first day of November, 1896, was in arrears and unpaid, "contrary to the tenor and effect of the said instrument in writing."

The defendants below filed a plea of the general issue, and an affidavit of merits as to the whole of appellee's demand.

The case was tried on the short-cause calendar, and, at the conclusion of the evidence, the jury, by direction of the court, found a verdict for the appellee, McCullough, and assessed his damages at $3750.50. The appellants, Landt and Moore, made a motion for a new

trial, which was overruled. Judgment was entered upon the verdict, and an appeal was prayed and allowed to the Appellate Court. The Appellate Court affirmed the judgment of the superior court of Cook county, and the present appeal is prosecuted from such judgment of affirmance.

The judgment in this case as to the material parts thereof, is as follows:

·"Whereupon come the jurors * * * who * * * after hearing all the evidence adduced, say: We, the jury, find the issues for the plaintiff and assess the plaintiff's damages at the sum of $3750.50. Whereupon the defendants submit herein their motion for a new trial in said cause. After arguments of counsel and due deliberation by the court said motion is overruled, and a new trial denied. Therefore, it is considered by the court that the plaintiff do have and recover of and from the defendants his said damages of $3750.50 in form as aforesaid by the jury assessed, together with his costs and charges in this behalf expended and have execution therefor. Whereupon the defendants, having entered their exceptions herein, pray an appeal," etc.

The bill of exceptions shows the following:

"(Plaintiff's attorney) * * * The plaintiff rests. (Defendants' attorney) We will rest too. * * * (Plaintiff's attorney) Now, if the court please, I ask the court to give the jury this instruction. * * * I will waive my opening. (Defendants' attorney) Will you waive your speech entirely? (Plaintiff's attorney) I will reply if there is anything necessary, but I do not understand there is anything to be said to the court or the jury. Whereupon the court instructed the jury to render a verdict in favor of the plaintiff for the sum of $3937.50. (Defendants' attorney) If your honor please, I enter a motion for a new trial, and I suppose it will take its regular course. (The court) I will dispose of it right now. (To the jury) You gentlemen may go until to-morrow

morning at ten o'clock. I will dispose of the motion for a new trial now. (Defendants' attorney) I do not think I care to urge the reasons that I have on the court further than to say that the evidence does not entitle them to recover any verdict from the state of facts. (The court) I will hear your reasons now. (Defendants' attorney) I think I will not urge my reasons for a new trial upon the court for fear you will grant it. (Plaintiff's attorney) Then we move for judgment, of course, upon the verdict. (The court) If that is all to be said on the motion for new trial, the motion will be overruled." (Then follow a copy of the lease introduced in evidence together with a statement of the erasures, interlineations and insertions in the same, and also a copy of an unsigned assent to the transfer of the lease by Stebbins to Landt and Moore, and the unsigned copy of a transfer of the same, and also a copy of a bond for $5000.00, executed by Landt and Moore to the appellee). "Which was all the evidence introduced upon the trial of the above entitled cause. And thereupon the court gave to the jury on behalf of the plaintiff the following instruction, to-wit: 'The jury are instructed that under the law and the evidence in this case the plaintiff is entitled to recover, and you will find the issues for the plaintiff and assess his damages at the sum of $3937.50;' to the giving of which instruction the defendants, by their counsel, then and there excepted.

"And the defendants, by their counsel, then and there asked the court to give the following instruction, to-wit:" (Then follows an instruction asked by the defendants below.) "But the court refused to give this instruction to the jury, to which decision of the court in refusing to give the same to the jury the defendants by their counsel then and there excepted. And thereupon the jury rendered a verdict against the defendants for the 'sum of $3937.50. Whereupon the defendants by their counsel then and there moved the court to set aside the verdict

so rendered and grant a new trial of the cause, and filed the following reasons in writing for their motion, to-wit: * * * And for grounds of their motion the defendants show to the court the following, to-wit: (1) That the said plaintiff has not made out any case entitling him to recover in said cause, by the evidence submitted by him to the jury therein; (2) that the verdict of the jury is not based upon any evidence whatever which entitles the said plaintiff to recover; (3) that the court erred in instructing the jury to find for the plaintiff in said cause; (4) that the court admitted on the trial improper evidence on the part of the plaintiff; (5) that the court erred in refusing to give to the jury the instruction asked by the defendants; (6) that the court erred in admitting in evidence the lease on which the said plaintiff relied for his recovery, inasmuch as there was a variance between it and the lease declared upon in the declaration, to which the attention of the court was specifically called at the time the objection was made; (7) that the court erred in admitting in evidence the alleged assignment of said lease, both because the plaintiff did not show himself competent to testify in reference thereto, and because it appeared therefrom that said assignment was never executed by the said James M. Stebbins; (8) that the court erred in admitting in evidence the alleged consent to such assignment on the part of the said plaintiff, inasmuch as it appeared therefrom that the same had never been executed by him; (9) that the verdict of the jury is contrary to the law and the evidence in the case. * * * But the court denied the motion and gave judgment on the verdict against the defendants, to which decision by the court in denying such motion the defendants by their counsel then and there excepted."

The amount of the verdict and judgment, as stated in the record made up by the clerk, is $3750.50, while the amount of the verdict, mentioned in the bill of exceptions, which the jury were instructed by the court to

render, is $3937.50; and the bill of exceptions states that the court gave judgment on the verdict for the latter amount.

FOLLANSBEE & FOLLANSBEE, for appellants.

E. W. ADKINSON, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the trial below appellee introduced only one witness, the appellee, besides the documentary evidence herein referred to; and the appellants introduced no evidence whatever.

*First*—Appellee introduced in evidence the lease set out in the declaration. To its introduction the appellants objected, upon the ground that there were material erasures, interlineations, changes and alterations apparent upon the face of the lease, and that it was the duty of the appellee to explain these. The objection was overruled by the trial court, and the lease was admitted in evidence as it was, without such explanation. The objection was well taken, and should have been sustained. These alterations and interlineations and erasures in the lease were pointed out by counsel for the appellants as appearing upon the face of the lease itself, and, although some of them may have been immaterial, many of them were material alterations, interlineations and erasures. It would extend this opinion to too great a length to point out all of these alterations, erasures and interlineations, but a few of them, which were material, may be noticed.

By the terms of the lease the lessee therein named, Stebbins, agreed, as security for the rents and covenants therein contained, to erect and complete upon the premises on or before the first day of May, A. D. 1893, a block of good and substantial three-story at least first-class brick or stone buildings, not less than five in number. It was also agreed that, at the termination of the lease-

hold, the lessor should have a right to purchase the buildings and improvements then upon said ground of the lessee, and in case the lessor and lessee could not agree as to purchase and sale, then said ground was to be re-valued in a certain manner therein provided. The lease, as originally drawn, provided as follows: "The manner of re-valuation shall be as follows: The lessor and lessee shall each choose a competent real estate dealer in the city of Chicago to re-value said ground," etc. Between the words, "estate" and "dealer," there were interlined the words, "owner or," so that, after this interlineation, the lease read as follows: "The lessor and lessee shall each choose a competent real estate owner or dealer in the city of Chicago to re-value said ground." The alteration here made was a material one, because the lessor and lessee were not confined, in their choice of persons to make the valuation, to real estate dealers, but could name, if they chose, in lieu thereof, an owner of real estate.

Again, provision was made in the lease for serving notice or demand upon the lessee for the purpose of forfeiting or terminating the lease in case of default in its provisions. The lease, as originally drawn, provided that "it shall be a sufficient service of such demand, notice or declaration to leave a copy thereof with the lessee, with the assignee of said lessee, or any of their legal representatives." This was a requirement of personal notice of the forfeiture, and of the other matters referred to, by leaving a copy with the lessee, etc. But the lease upon its face showed that the following clause was inserted therein, to-wit: "Or in case such copy cannot be so served [that is, leaving it with said lessee, etc.,] to give notice by publication once each day for ten days in a prominent daily paper in the city of Chicago." This was a material alteration, because it gave the lessor the privilege of giving to the lessee, or the assignee of the lessee, notice by publication instead of personal notice.

It also appears that a typewritten page had been inserted in the lease, different in appearance from the rest of the writing used in said instrument. The additional page so inserted had reference to the right of the lessor to purchase the buildings at the termination of the lease and to the method of re-valuing the same in case of a disagreement upon that subject. It also provided for an extension of the lease for ten years longer at five per cent upon the re-valuation, and gave an additional time of six months at the expiration of the ten years to the lessee, in which he was to sell or remove the buildings and improvements, etc. The additional page also provided that the lease was not to be assigned during the first twenty-five years without the consent of the lessor, etc.

The lease also provided that, at the expiration of its term, or at its termination by forfeiture or otherwise, the lessee "will yield up said demised premises in good condition together with all the buildings and improvements thereon." But the words, "together with all the buildings and improvements thereon," were erased.

That these alterations, interlineations and erasures were material is evident from the fact, that many of them changed the legal effect of the instrument, (*Kelly* v. *Trumble*, 74 Ill. 428), and its operation, and the liability of the parties thereto. It was, therefore, the duty of appellee, claiming the benefit of the lease, in which they appeared, to explain the same. They were of such a character as, in connection with the other matters hereinafter referred to, amounted to "suspicious circumstances," as those words are used in the decisions and text books; and, therefore, the court should have refused to admit the instrument without explanation. (*Catlin Coal Co.* v. *Lloyd*, 180 Ill. 398; *Merritt* v. *Boyden & Son*, 191 id. 136).

In *Pyle* v. *Oustatt*, 92 Ill. 209, where a deed was introduced showing interlineations and erasures upon its face, this court said (p. 213): "The instrument when offered in evidence being in this condition, it clearly devolved up-

on appellants to satisfactorily account for the interlineations and erasures before the jury would be warranted in regarding it as a valid deed."

*Second*—The appellants, upon the trial below, also objected to the introduction of the lease upon the ground of a variance between the allegation in reference thereto, contained in the declaration, and the proof offered in support of the allegation. The declaration set forth *in hæc verba* an unsigned and unacknowledged lease, while the lease introduced in evidence appeared to be executed by the parties thereto. The court at once sustained this objection, and gave leave to the appellee to amend by making the allegation in the declaration correspond to the proof introduced; but although leave was given to amend, no amendment was made to obviate the variance. (*City of Chicago* v. *Moore*, 139 Ill. 201). As is said by the Appellate Court in their opinion, "this also was error, the variance being a material one."

In *Wisconsin Central Railroad Co.* v. *Wieczorek*, 151 Ill. 579, we said (p. 583): "If a party for any reason disregards the leave given by the trial court to amend his pleading, so as to make it correspond with the proofs, and omits, without justifiable cause, the due incorporation into the record of the amendment pursuant to the leave, this court, *sua sponte*, has no authority to carry out the leave, make his amendment for him, interpolate it into the record, and thereby save him harmless of error assigned. After obtaining such leave, the plaintiff was in nowise obliged to exercise the privilege given and make the amendment, and until the amendment was in fact made, the declaration in all respects remained the same, as though no leave to amend it had been given." Again, in *Sinsheimer* v. *Skinner Manf. Co.* 165 Ill. 116, it was held that a mere permission by the court to amend does not of itself amount to an amendment.

The objection in regard to this variance is not made for the first time in this court, but was made in the court

below, and was assigned as one of the reasons for granting a new trial, and is assigned as one of the errors in this record.

In this connection it is to be observed that, when the trial court gave leave to the appellee to amend its declaration, the counsel for appellants asked for time to file an affidavit for a continuance. This application was overruled at once. Section 25 of the Practice act gives the defendant in such case, where the plaintiff is allowed the privilege of amending, the right to make an affidavit that, in consequence thereof, the defendant is unprepared to proceed with the trial of the cause. It is true that the defendant must state in his affidavit what particular fact or facts he expects to prove, and the court, if satisfied that the evidence expected to be procured at the next term would not be material, may refuse a continuance of the cause. But, as we understand the statute, the court only refuses such continuance, after being satisfied from an examination of the affidavit presented, that such continuance cannot be properly granted. Here, however, leave to present the affidavit, without reference to the question whether it showed good cause for continuance or not on account of the amendment, was refused.

*Third*—The appellee, upon the trial below, proposed to introduce in evidence certain documents, showing an assignment of the lease and of the leasehold term by the lessee, Stebbins, to the present appellants, and also showing the written consent of the appellee as lessor to such assignment by Stebbins to appellants, but the appellee did not have in his possession the original instruments, and proposed to offer secondary proof thereof. Upon this subject we concur in what is said in relation thereto by the Appellate Court in their opinion as follows: "In the further progress of the trial appellee's counsel stated to the court that he had served notice upon appellants' counsel to produce at the trial two certain instruments, or he would offer secondary evidence of the same. Ap-

pellee's counsel then asked appellants' counsel if he had said instruments, to which appellants' counsel and also appellants themselves stated that they did not have the instruments called for. Whereupon, against the objection of appellants' counsel, the court permitted oral evidence, tending to establish an assignment in writing of the lease offered in evidence, and a written consent by the lessor to such assignment. The court also, against objection of appellants' counsel, permitted in evidence purported copies of the same. To all these rulings of the court exceptions were duly preserved. The rulings were, in our opinion, erroneous, in that there was no showing, beyond the mere statement of counsel, that any notice had ever been served upon appellants or their counsel to produce the original documents, purported copies of which were admitted in evidence, nor was there any showing that appellants or either of them ever had in their possession or control the alleged assignment of the lease, or the alleged written consent thereto. (*Matteson* v. *Noyes*, 25 Ill. 481; *Bishop* v. *American Preservers'* *Co.* 157 id. 284; 1 Greenleaf on Evidence, sec. 560; 1 Jones on Evidence, sec. 218). For appellee it is claimed that a certain bond offered in evidence, signed by appellants, independent of the evidence above objected to, shows that the lease sued on was assigned by the lessee, Stebbins, to appellants, but we think the contention is untenable. The recital in the bond referred to states that the lease, describing it, was 'assigned by said Stebbins to said Landt and Moore,' but it fails to show whether the assignment was in writing. The allegation of the declaration is, that the assignment was in writing, and consequently this proof would be insufficient to sustain the declaration."

In this connection it is to be observed, that the allegations of the declaration, and the proof offered on the part of appellee, are to the effect that the latter claimed rent for the premises by virtue of a written assignment,

and also by virtue of a written consent to that assign-
ment. But the record shows that what appellee termed
a written assignment of the lease, and a written con-
sent to the assignment of the lease by the lessor, were
neither signed nor acknowledged by the lessee, Stebbins,
nor by the lessor, McCullough. Drafts of a proposed
assignment of a lease by the lessee, and of a proposed
consent to such assignment by the lessor, did not estab-
lish the allegation of the declaration as to a written as-
signment and a written consent. As we understand the
record, it was not established by the evidence that there
was a parol assignment of the lease in question by Steb-
bins to the appellants, followed by their possession, nor
that the appellants entered into possession in pursuance
of the unsigned draft of the assignment.

*Fourth*—But it is said that all the errors, committed
by the trial court, were waived by the appellants; and
this alleged waiver is based upon the alleged failure of
counsel for appellants to press upon the attention of the
court his reasons for a new trial.

The bill of exceptions, as quoted in the statement pre-
ceding this opinion, shows that counsel for appellants
made a motion for a new trial, and that he filed in writ-
ing the reasons, upon which he based his motion for a
new trial. The bill of exceptions shows that the court
overruled the motion for a new trial, and that appellants
excepted to the decision of the court in overruling the
motion. The written reasons, upon which the motion for
a new trial was based, as set forth in the statement pre-
ceding this opinion, are sufficient to embrace the objec-
tions by the appellants to the admission of evidence, as
hereinbefore indicated. Under these circumstances this
court has a right to consider whether or not the objec-
tions so made were valid. (*Chicago, Paducah and Memphis
Railroad Co.* v. *Goff,* 158 Ill. 453; *Ottawa, Oswego and Fox
River Valley Railroad Co.* v. *McMath,* 91 id. 104; *Firemen's
Ins. Co.* v. *Peck,* 126 id. 493; *Illinois Central Railroad Co.* v.

*O'Keefe*, 154 id. 508). We have held that, where a plaintiff in error, or appellant, has filed certain points in writing, particularly specifying the grounds of his motion for a new trial, he will be confined in the Appellate Court to the reasons specified in the court below, and will be held to have waived all causes for a new trial, not set forth in his written grounds. (*Ottawa, Oswego and Fox River Valley Railroad Co.* v. *McMath*, 91 Ill. 104; *Consolidated Coal Co.* v. *Schaefer*, 135 id. 210; *Hintz* v. *Graupner*, 138 id. 158; *Brewer Brewing Co.* v. *Boddie*, 162 id. 346; *West Chicago Street Railroad Co.* v. *Krueger*, 168 id. 586; *Bromley* v. *People*, 150 id. 297). In view of what has been said, it cannot be claimed that the appellants here waived the causes for a new trial embraced in the objections above mentioned upon any such ground as that such causes were not set forth in their written reasons for a new trial. They were so set forth therein. The rule, that a party will be considered to have waived all points not contained in his written motion, implies the converse of the rule, namely, that he has not waived any points which are contained therein.

The statute provides that, "if either party may wish to except to the verdict, or, for other causes, to move for a new trial, or in arrest of judgment, he shall, before final judgment be entered, or during the term it is entered, by himself or counsel, file the points in writing, particularly specifying the grounds of such motion, and final judgment shall thereupon be stayed until such motion can be heard by the court." (Practice act, sec. 56; 3 Starr & Curt. Ann. Stat.—2d ed.—p. 3054). In the case at bar, the points in writing were certainly filed during the term, whether they were filed on April 22, 1901, or on April 24, 1901, because the April term of the superior court extended through the whole of the month of April. We are inclined to think that the points in writing were filed on April 24, 1901, because the file-mark indicated that such was the date of the filing, and because, when counsel for

appellants on April 22, 1901, entered his motion for a new trial, he said; "I suppose it will take its regular course." Its regular course would be the filing of his points in writing at any time during the term when the judgment was entered. As the cause was tried on the short-cause calendar, the trial lasted but a short time, and probably not longer than an hour. It is impossible to suppose that the nine written reasons in support of the motion for a new trial were prepared and submitted to the court on April 22, 1901, when the motion was summarily disposed of by the court.

It is said that counsel for appellants waived his right to insist upon his motion for new trial, or upon the written reasons filed in support of the motion, because, when the court said "I will hear your reasons now," counsel for appellants replied, "I think I will not urge my reasons for a new trial on the court for fear you will grant it." This language, counsel states, was used by him in a sarcastic or humorous way by reason of the fact, that the court had already, within the hour during which the trial lasted, overruled peremptorily every objection, which he made to the evidence introduced by the appellee. The language was not respectful to the court, but, taking all the statements in the bill of exceptions together, we do not think that counsel for appellants can be charged with the intention of waiving his right to insist upon his reasons for a new trial. As soon as the court instructed the jury to return their verdict in favor of the plaintiff, counsel for appellants entered his motion for a new trial. The court refused to allow the motion to take the usual course, and expressed an intention to dispose of it right away. Counsel had no time to prepare the written reasons in support of his motion for a new trial at that time, but did suggest to the court one of those reasons, namely, "that the evidence does not entitle them to recover any verdict from the statement of facts." If what occurred in court, as between the court and counsel for appellants

on April 22, 1901, is to be considered as literally correct, then it would appear that the motion for a new trial was made and overruled by the court before the jury returned their verdict into court. The statement is, "whereupon the court instructed the jury to render a verdict in favor of the plaintiff for the sum of $3937.50." But there is no statement, that the jury did return their verdict into court there and then on April 22, 1901. The statement, that the jury rendered their verdict against the defendants, is made in that part of the bill of exceptions, which relates to what occurred subsequently on April 24, 1901. It also appears that appellants asked an instruction to the jury, which was refused by the court. The asking for this instruction, and its refusal by the court, are matters which are set forth in that part of the bill of exceptions, relating to what occurred on April 24, 1901, and not in that part which relates to the occurrences of April 22, 1901. It surely cannot be true, that the court overruled the motion for a new trial before the jury returned their verdict, and before the instructions asked for were disposed of. It seems to be clear, that the part of the bill of exceptions, which refers to the transactions taking place on April 22, 1901, must be read in connection with the part of the bill of exceptions, which relates to the filing of the written reasons in support of the motion for new trial, as appears in that part of the bill of exceptions relating to transactions occurring on April 24, 1901. In other words, the two parts of the bill of exceptions supplement each other and must be read together. When so read, we are unable to see that there was any waiver by appellants of their reasons for a new trial.

The facts of the case at bar seem to be somewhat similar to the facts in the case of *Chicago, Paducah and Memphis Railroad Co.* v. *Goff, supra.* In the latter case, it appeared that the written motion and points of appellants for a new trial were filed after the hearing thereof, and after the motion for a new trial was made and passed

on by the court, but at the same term. So, here, as soon as both parties rested, and the court had instructed the jury to find for the plaintiff, counsel for appellants made a motion for a new trial, and after the hearing of that motion, and after it was passed on by the court, counsel for appellants filed his written reasons in support of his motion for new trial, but he filed them at the same term, at which the action of the court, passing upon the motion for new trial, was taken. In the *Goff case*, the motion for a new trial, as made and overruled, was only a verbal one, and such is the fact here, so far as what occurred on April 22, 1901, is concerned. In the *Goff case*, it was held that the court below committed no error in refusing to strike the written reasons for a new trial from the files because such reasons were filed after the court had passed upon the motion for new trial. If it would have been error to strike the written reasons in support of the motion for a new trial in this case from the files, then no error can be predicated upon the fact that, here, they appear in the files, and as a part of the bill of exceptions. Being properly filed, and properly noticed in the bill of exceptions, they can be considered by this court. We are, therefore, of the opinion that there was no waiver by appellants of their right to insist upon their motion for a new trial, and upon the written reasons therefor. Inasmuch as the bill of exceptions shows that a motion for a new trial was made, and overruled, and an exception was taken, the court of review, to which the record is taken on appeal, may consider the propriety of refusing the motion for a new trial. (*Bromley* v. *People, supra*). We think that the court erred in refusing to grant a new trial.

Accordingly, the judgments of the Appellate Court, and of the superior court of Cook county, are reversed, and the cause is remanded to the superior court of Cook county for further proceedings in accordance with the views herein expressed.      *Reversed and remanded.*