600    APPELLATE COURTS OF ILLINOIS.

Devine v. Illinois Telephone Construction Co., 159 Ill. App. 600.

---

**John F. Devine, Administrator, Appellee, v. Illinois Telephone Construction Company et al., Appellants.**

**Gen. No. 15,507.**

1. APPEALS AND ERRORS—*effect of judgment erroneous as to one defendant.* If in an action sounding in tort a judgment is erroneous as to one defendant it must be reversed as to both.

2. EVIDENCE—*effect of absence of, showing ownership and operation.* Held, that the judgment against one of the defendants in this case, which was rendered for personal injuries, was erroneous in that there was no evidence which tended to connect such defendant with the ownership or operation of the agencies which caused the injury complained of.

3. AMENDMENTS AND JEOFAILS—*what not abuse of discretion.* Held, that it was not error for the trial judge in this case to permit one of the defendants at the trial to supplement its plea of the general issue with a separate plea denying ownership, operation and control.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1909. Reversed and remanded. Opinion filed February 16, 1911.

JOHN A. BLOOMINGSTON, for appellants.

HAYES McKINNEY, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

Because of the disposition we feel compelled to

make of this appeal, it is not only unnecessary but inexpedient for us to express any opinion upon the merits of the plaintiff's claim against the Illinois Telephone Construction Company. The judgment must be reversed and the cause remanded for a new trial because the judgment is against both the Illinois Telephone Construction Company and the Illinois Tunnel Company, and there is no evidence tending to fasten any liability on the last named corporation for the accident causing the death of the plaintiff's intestate.

We are not at liberty, even if we should hold the verdict and judgment justified as against the Illinois Telephone Construction Company, to affirm the judgment against it and reverse it as to the Tunnel Company, or to reverse the judgment as a whole and remand the cause with permission to the plaintiff to dismiss as to the Tunnel Company and enter judgment on the verdict given against the Construction Company. The former course was pursued in Memphis Ry. Company v. Stringfellow, 44 Ark. 322, and said to be in accordance with the common law. But this is not a possible or allowable practice in Illinois. If the judgment is erroneous against one of the defendants only it is erroneous as a whole, and must be reversed as a whole, with a general remandment of the case. Smith v. Byrd, 2 Gilman, 412; Brockman v. McDonald, 16 Ill. 111; Williams v. Chalfant, 82 Ill. 218; Jansen v. Varnum, 89 Ill. 100-102; West Chicago Street Ry. Co. v. Martin, 154 Ill. 523-526; Supreme Lodge Knights of Honor v. Goldberger, 175 Ill. 19; Seymour v. Richardson Fueling Co., 205 Ill. 77-82; Eckels v. Farley, 131 Ill. App. 557; Eckels v. Henning, 139 Ill. App. 660.

This proposition is not denied by the appellee, but he attempts to justify the judgment as a whole on several grounds.

He argues, first, that the evidence shows the Tunnel Company to be liable in this cause because:

(a) "The name Illinois Tunnel Company appeared upon the engine and cars through the movement of

which on a railway on the Lake Front Park the accident occurred which is the basis of this suit against both the companies," and because (b) "certain of the officers held the same position in both Companies"— the Illinois Telephone Company and the Illinois Tunnel Company.

Clearly, whatever probative force evidence tending to establish these statements would have in the absence of anything to the contrary, to show the ownership and operation of the engine and cars at the time of the accident, it has none to overcome the uncontradicted testimony of the witnesses Kendrick (called by plaintiff) and Altpeter and McGary (called by the defendants), that the Illinois Telephone Construction Company was actually owning and operating them at that time and that the Illinois Tunnel Company was not, and the still more indisputable documentary evidence (produced and offered by defendants in consequence of a *subpoena duces tecum* taken out by plaintiff) which proved their operation by the Construction Company. Appellee also claims that the evidence shows the Tunnel Company liable, because (c) of the following matters: The Illinois Telephone Construction Company was engaged at the time of the accident in the work of constructing a tunnel under the city. One of the outlets to the tunnel was at the foot of Harrison street to the east of the Illinois Central tracks. Cars came out of the tunnel filled with the excavated clay and were taken across the Illinois Central tracks to a temporary north and south track, on which they were switched and thence pulled by a small locomotive to the place where the clay was to be dumped. It was while the cars were moving on this north and south track that the accident resulting in the death of the plaintiff's intestate who was a dump man, in the employ of the Illinois Telephone Construction Company, happened. The Illinois Tunnel Company was the corporation holding the license or privilege from the city to construct and operate the tunnel in the street—a license or privilege

of the kind usually, though unprecisely, called a "franchise," and so called in the evidence in this case.

Therefore, says the plaintiff, "The Illinois Telephone Construction Company was the agent and servant of the Illinois Tunnel Company in building the tunnel, including the work which was being done on the Lake front," consequently the said Tunnel Company is liable for the acts and defaults of the Construction Company while doing that work.

The evidence certainly tended to establish the premises in this statement, but the conclusion is a *non-sequitur*. The Illinois Telephone Construction Company was an independent company, the evidence shows, constructing the tunnel and doing the dumping work on the Lake Front Park. It owned, operated and controlled all the agencies which brought about the accident and employed all the employes mentioned in connection with it. The Illinois Tunnel Company was, according to the testimony of Mr. H. H. Kendrick, its Treasurer, in existence at that time and held the "franchise" for the tunnel. He said, when the question was pressed, that the Tunnel Company "owned the underground bore." The character of the ownership he then explained by saying "They held the franchise." But he explicitly says also, the work on the tunnel was being done in 1905 by the Illinois Telephone Construction Company and that Company "had not turned it over to the Illinois Tunnel Co.," and that all the working agencies and all the working agents involved in the work were owned and paid respectively by the Illinois Telephone Construction Company. "The Tunnel Company was not an operating Company" during that period and did not "become an operating Company and take over the paraphernalia of the Illinois Telephone Construction Company until September 15, 1906," he said.

The relations of the two companies are nowhere in the record stated any more fully than this, nor indeed so fully by any other witness. And yet this is very

vague. As to the terms of the "franchise" or license, and as to whether the Construction Company was, as may be conjectured, working under a construction contract with the Tunnel Company or had itself some license, privilege or so-called franchise in the streets, we are left entirely in the dark by the record.

The witness Alpeter was timekeeper for the Illinois Telephone Construction Company in 1905. He called it (apparently by a slip of the tongue) the Chicago Telephone Construction Company, and then gave his understanding of the relations of the Companies (at the same time admitting that he *knew* nothing about it) as follows: "The Company at that time went under the name of the Chicago Telephone Construction Company and today it is the Illinois Tunnel Co. It is the same Company only that they have changed the name, a I understand."

It is not claimed or admitted, however, by either party that this "understanding" was correct.

Mr. McGarry, the manager of the claim department of George W. Jackson, Incorporated, testified that in 1905 George W. Jackson was chief engineer and general manager of the Illinois Telephone Construction Company; that at that time the Illinois Tunnel Company was not operating; that in September or October of 1906 Mr. Jackson took the business by contract. He says that then "The Illinois Tunnel Company contracted with Mr. Jackson to do the work themselves, they took hold and contracted with him to finish the work. He took it under contract from that time on. Prior to that time he was doing it as Chief Engineer and Manager of the Illinois Telephone Construction Company." Asked then by the counsel for the plaintiff, "Was the Illinois Tunnel Co. then the successor of the Illinois Telephone Construction Co.?" Mr. McGarry answered, "I presume that is right. That is my understanding." This is all the evidence in the record on the point, vital so far as the Tunnel Company is concerned, of its connection with the work of filling in

the Lake Front Park in 1905, with the material taken out of this "underground bore" and moved on the cars which ran over the plaintiff's intestate. But the evidence is overwhelming, as hereinbefore indicated, that those cars were owned, run and operated entirely by the Illinois Construction Company, and that the Tunnel Company had nothing actually to do with their management or control.

In such a state of the record, it is unnecessary to discuss the authorities cited by the appellee, such as R. R. Co. v. McCarthy, 20 Ill. 385; R. R. Co. v. Whipple, 22 Ill. 105; Railway Co. v. Woosley, 85 Ill. 370, and Ry. Co. v. Dudgeon, 184 Ill. 477.

If we were even able to assent (as, under the doctrine of West v. Railroad Company, 63 Ill. 545, and Boyd v. Railway Company, 217 Ill. 332, we are not) to the proposition that a "franchise" of the Tunnel Company to tunnel under the streets of the city or Chicago might render it liable for the negligent default of the Construction Company while disposing of the material on the Lake Front Park, something more definite as to the respective relations of the Companies to the "franchise" and to the work in 1905 must have been shown to justify a judgment in this case against the Tunnel Company.

But, secondly, the appellee relies also, and perhaps especially, on technical grounds of practice and pleading. He says that the judgment against the Tunnel Company, even if it is not warranted on the merits by the record, should not be disturbed. Because (a) the trial court erred in allowing the plea of the general issue first filed for the Tunnel Company jointly with the Construction Company to be supplemented by the Tunnel Company's separate plea of non-operation and control filed during the trial. Allowing this plea to be filed has been assigned as a cross-error by the appellee, and he asks that this court should remedy it by excluding from consideration the questions raised by the plea and consider the defense of both companies as though

they stood upon the plea of the general issue jointly filed by them. His argument is that under the doctrine announced by the Supreme Court in Traction Co. v. Jerka, 227 Ill. 95, the fact of the joint ownership, operation and control of the cars and appliances was admitted by the Tunnel Company by the filing of the general issue, and it was an abuse of discretion which should be treated as non-existent for the trial court afterward to have allowed a retraction of this admission by the filing of the special plea during the trial.

In Eckels v. Henning, 139 Ill. App. 660 (affirmed by the Supreme Court under the name of Henning v. Sampsell, 236 Ill. 375), this court had occasion briefly to question an attempted application of the doctrine of the Jerka case (227 Ill. 95) and the Chapman case (220 Ill. 428), to what were in the Henning case the separate and several pleas of the general issue filed by alleged tort-feasors sued jointly for a tort for which only one was proved guilty. We do not intend, however, to place our decision in this case in any degree on the doubt therein expressed. There is a special plea in this case of non-ownership, operation and control in the record, and we do not hold it an abuse of discretion in the trial judge to allow it filed when and as he did. We see clearly that it might be an abuse of judicial discretion if a corporation were solely sued for a personal injury and filed no special plea denying ownership or control of the injuring agencies, to allow it on the eve of trial or in the course of trial to file such a plea, disclosing then, for the first time it might be, the real tort-feasor, whose interests were identical or involved with the defendant, but in whose favor the statute of limitations had run. We are not intending here to lay down a rule which would cover such a case, nor, it may be, all cases of the joint suing of the actual tort-feasor with an innocent party, if they jointly plead, as in this case, the general issue. But although each case must stand on its peculiar facts in this regard, the general principle is that a trial court

may properly allow, in its discretion, before or during trial, amendments in pleading under which the truth can be shown without estoppel. For such amendments are generally "in furtherance of justice" and "enable the defendant to make a legal defense," and fall within both our Statute of Amendments and the Practice Act.

In the case at bar the Construction Company and Tunnel Company were sued and declared against jointly. The agencies inflicting the alleged injury were declared to be controlled by them jointly. The companies pleaded the general issue.

During the examination of jurors the counsel for the defendants announced that the evidence would show that the Construction Company was the party employing the deceased and the party doing the work at the point where the accident happened, and that it owned and operated the cars and equipment involved; to which the counsel for the plaintiff replied: "Well, then, as soon as we begin taking evidence we will have a formal stipulation as to that." Counsel for plaintiff was pressed during the opening statements to say whether he purposed to try to hold both defendants or only one, but declined to commit himself then, claiming, and being supported in his claim by the court, over the objection of defendants, that he would have the right to dismiss against one defendant at any time thereafter. Then counsel for defendants asked leave to file the plea of non-operation and control for the Tunnel Company, and although an objection of the plaintiff's counsel to this was then sustained, it was with the following colloquy:

Counsel for defendants: "Well, I just want an opportunity of presenting it later on."

The Court: "Counsel may conclude to dismiss himself, but he can take his own time about that."

Counsel for defendants: "I just want to show the proffer was made and I will present the document later on."

The trial proceeded and testimony showing the

actual control by the Construction Company and the non-control by the Tunnel Company of the injuring agencies was produced as hereinbefore indicated, the witnesses being cross-examined on their testimony in this regard by counsel for plaintiff.

The request for leave to file the special plea of non-operation and control for the Tunnel Company was renewed and granted before the case went to the jury and before the documentary evidence concerning the payment of the employes doing the work which caused the accident was produced. The court apparently was satisfied of the propriety of so allowing it when he had determined it was a plea in bar and not in abatement.

Counsel for the plaintiff, in the course of the colloquy which then took place, said that he "didn't want to have it" (by the context apparently referring to the verdict or judgment) "against the Illinois Tunnel Co. *and* the Construction Co."

We do not think the trial judge abused his discretion in this case in allowing the filing of the plea, nor in refusing to vacate his order allowing it on the subsequent application of the plaintiff.

The appellee, however, further insists that even were the filing of the special plea properly allowed, the judgment against both defendants should not be reversed: Because (b) the record does not raise the question of the rightfulness of the inclusion of the Tunnel Company in the judgment. This is based on the argument that one of the bills of exceptions shows that although the Tunnel Company filed a separate motion for a new trial with many reasons which expressed or implied the statement that there was no sufficient evidence before the jury to hold it liable; yet on argument of the motion for a new trial the counsel for the defendants only argued this question, if at all, under the point "That both of the defendants could not have been employers of the plaintiff's in-

testate, and that but one of the defendants could have been.''

This was tantamount, he says, to an abandonment of the position that the judgment against the Illinois Tunnel Company was without any basis in the evidence, and should estop that company from insisting on that point in this court.

We do not agree with this contention. The opinion in Calumet Furniture Company v. Reinhold, 51 Ill. App. 323, is relied on by the appellee to sustain his extreme doctrine of abandonment by non-argument of reasons formally presented in a motion for a new trial. The language of this opinion construed in any sense on which the appellee could rely herein, has been expressly repudiated by this court since. Hartford Fire Insurance Company v. Northern Trust Company, 127 Ill. App. 355. It is not in accordance with the rules laid down by the Supreme Court or by this court on the subject. See, for example, Landt v. McCullough, 206 Ill. 214.

The judgment of the Superior Court is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*