## The Grand Lodge of the Ancient Order of the United Workmen of the State of Illinois v. Emily Young.

1. ALTERATION OF INSTRUMENT—*law with respect to explanation.* In this state there is no presumption of law as to whether an instrument has been altered from its condition when executed, but it is a question of fact, and the party producing an instrument which apparently has been altered is required to explain the same.

2. ALTERATION OF INSTRUMENT—*power of court to permit jury to use magnifying glass.* Where witnesses testifying with respect to an altered instrument used upon the stand a magnifying glass, the court is empowered to permit the jury to take such magnifying glass to the jury room for use in examining such instrument.

3. WITNESSES—*when incompetent.* A party in interest is incompetent to testify to conversations had with a deceased agent of the opposite party.

4. INCOMPETENT EVIDENCE—*when party cannot object to.* A party cannot object to a party in interest testifying to conversations with a deceased agent of such objecting party where such conversations were first elicited upon the cross-examination of the objecting party.

5. CERTIFIED COPIES—*when incompetent.* A certified copy of a corporate record is incompetent where the certificate appended thereto does not state that the document certified to is a copy of the record, and that the party certifying to the same is the keeper of such records.

Action of assumpsit. Appeal from the Circuit Court of Pike County; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed February 1, 1906.

WILLIAMS & WILLIAMS and PAUL F. GRATE, for appellant; ORENDORFF & PATTON, of counsel.

WILLIAM MUMFORD and FRANK S. DULANEY, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee against appellant to recover the amount of a benefit certificate for $2,000 issued to William J. Graham, the deceased husband of appellee. Upon the trial in the Circuit Court there was a verdict against appellant for $2,167, a *remittitur* by appellee of $67, and judgment against appellant for $2,100.

There was no controversy on the trial as to the fact that

the certificate was issued to deceased; that he remained a member of the order in good standing until April 28, 1897; that on June 18, 1897, he was adjudged insane, and remained insane until his death July 7, 1903. On behalf of appellant it was contended that Graham was duly suspended in accordance with the constitution and by-laws of the order on April 28, 1897, for a failure to pay assessments 366, 367 and 368, due on that day, and that he was never reinstated to membership in the order; that the receipt offered in evidence by appellee, purporting to bear date April 28, 1897, for assessments 366, 367 and 368 was never given by appellant for said assessments, but was given for assessments 362 and 363, due February 28, 1897, and that said receipt had been altered so as to purport to be for the April assessments; that said Graham paid no assessments for the month of May, 1897, but that the receipt in evidence, purporting to bear date May 25, 1897, was given for assessments due March 28, 1897, and had been altered as to date, assessment numbers and amount, so as to purport to be for the assessments due May 28, 1897.

On behalf of appellee, it was contended that the receipts in evidence were genuine; that the alterations, erasures and changes apparent upon their face were made before the same were issued; that at the time Graham was adjudged insane, he was in good standing in the order, and that the dues and assessments that thereafter accrued or might accrue were tendered by appellee to appellant; that, although Graham was legally suspended for the non-payment of assessments 366, 367 and 368, due April 28, 1897, he, thereafter, on May 25, 1897, paid to appellant assessments 369, 370 and 371, due May 28, 1897, and that by receiving payment of said assessments, appellant waived the prior suspension, if any, and the receipt of such payment operated to reinstate him in good standing in the order; that, after Graham became insane, appellant refused to accept payment of dues and assessments for the reason that the insured was insane, and for no other reason, and that appellant was thereby estopped from setting up any other or

different ground of forfeiture, as a defense to a suit on the benefit certificate.

To show the payment of assessments due April 28, 1897, and May 28, 1897, appellee offered in evidence "Exhibits 3 and 4," the former purporting to be a receipt by E. S. Bundy, financier of the local lodge of which deceased was a member, for assessments 369, 370 and 371, due in M , and the latter a like receipt for assessments 366, 367 and 368, due in April. Appellant objected upon the ground that the receipts on their face showed evidence of changes and alterations, and that a sufficient explanation had not been made by appellee to permit them to go to the jury, but the objection was overruled and the receipts admitted in evidence. In this state there is no presumption of law whether an instrument has been altered from its condition when executed, but it is a question of fact, and the party producing such an instrument is called upon for an explanation. Catlin Coal Co. v. Lloyd, 180 Ill. 398; Merritt v. Boyden, 191 Ill. 136; Landt v. McCullough, 206 Ill. 214.

Appellee and Mary Edmonson, a witness called on her behalf, both testified that the receipts were found by appellee, July 6, 1897, in the pocket of her husband's clothing, with a knife, lead pencil and piece of tobacco; that they were in the same condition and had the same appearance when so found as when they were offered in evidence upon the trial, and that they were in the handwriting of E. S. Bundy, the lodge financier. This explanation was sufficient to authorize the court to permit the receipts to go to the jury, and the objection thereto was properly overruled.

It is also urged that the court erred in permitting appellee to testify to certain alleged conversations had by her with E. S. Bundy, the lodge financier, since deceased. Appellant is in no position to raise the question, because the conversations referred to were brought out upon the cross-examination of appellee by counsel for appellant, and her subsequent examination with reference thereto by her own counsel added nothing prejudicial to appellant.

The testimony of appellee as to conversations with

Bundy was, however, incompetent. Bundy, as the financier of the local lodge, was, in his lifetime, the agent of appellant, and by section 4 of chapter 51, Revised Statutes, appellee was an incompetent witness as to any admission or conversation between herself and such deceased agent. Zeigler v. Clinton Ins. Co., 84 Ill. App. 442; Rothstein v. Siegel, Cooper & Co., 102 Ill. App. 600.

Upon retiring to consider their verdict, the jury requested permission of the court to take with them the magnifying glass used by the witnesses, in testifying to the erasures and alterations appearing upon the several receipts offered in evidence and also used by the court and counsel in inspecting the same, which request was denied by the court. The original receipts offered in evidence have been certified to this court and an examination of the same persuades us that the request should have been granted. The receipts, upon their face, bear evidence of having been altered by means of erasures and by writing over the words erased. Unless the jury were afforded the same opportunity possessed by the witnesses, who testified to the erasure of certain words and figures, the writing over such erasure in different ink from that used in the body of the receipts, and that the outline of portions of certain words and figures so erased, not visible with the naked eye, was discernible with the aid of a magnifying glass, they could neither apply nor weigh the evidence of the witnesses in arriving at a conclusion. An examination of the receipts with a magnifying glass discloses much that cannot be seen with the natural eye tending to support appellant's contention with reference to the alterations, and therefore the request made by the jury was proper and should have been granted by the court. Kannon v. Galloway, 2 Baxter, (Tenn). 230; Morse v. Blanchard, 117 Mich. 37; Short v. State, 63 Ind. 376.

Appellant offered in evidence, and the court admitted, the original report made by the recorder of the local lodge to appellant, from which it appears that the insured was entered upon the records of the local lodge as "suspended" on April 28, 1897, for non-payment of assessments then

due, and was so reported to appellant. Appellee insists that the report was improperly admitted, but has failed to assign any cross-error thereon. As we understand the facts, the records of the local lodge covering the time in question were destroyed by fire and are, therefore, not available to appellant as evidence.

By section 15, chapter 51, Revised Statutes, it is provided that the papers, entries and records of any corporation or incorporated association may be proved by a copy thereof, certified, etc., and section 16 provides that the certificate shall contain a statement that the person, so certifying, is the keeper of such papers, entries and records. In the absence of the record of the local lodge, purporting to show the suspension of the insured, a certified copy of the records of appellant in that regard was competent as evidence. The certificate of the grand recorder, here involved, is defective in failing to certify that the paper is a copy of the records of appellant, and that he is the keeper of such records.

The court did not err in giving the third and eleventh instructions asked by appellee. They state the law applicable to the case, and it was so stated to the jury in the first and second instructions given at the request of appellant.

Section 13 of the by-laws of appellant association provides in part that in the event of the suspension of a member for non-payment of dues, if such suspension shall have existed for thirty days, a certificate of good health shall be furnished by the member before he can be reinstated.

The 12th instruction given to the jury at the request of appellee is as follows: "If you believe from the greater weight of evidence in the case, that in the month of June, 1897, and before the 28th day thereof, plaintiff tendered and offered to the financier of the local lodge, of the defendant order, at Roodhouse, Illinois, the assessments and charges due from and on account of the membership of William J. Graham in the order, and that such financier refused to accept such assessments and charges on the

ground and for the reason that said William J. Graham was insane, and for no other reason, then, as a matter of law, such refusal so made, if the evidence so shows it, would estop and prevent the defendant order from now asserting and insisting upon any other reason for the act of said financier except the one so alleged and made by said financier." And the sixth instruction given at the request of appellee is of like purport. These instructions necessarily assume that Graham had not paid assessments due April 28 and May 28, 1897, and in that event it necessarily follows that he became suspended April 28th, and that on May 28th he had been so suspended for a period of thirty days and in the absence of a waiver by appellant of the requirement, he was not then eligible to reinstatement without a certificate of good health. It is manifest that after Graham became insane he could not procure the certificate of good health entitling him to reinstatement. The competent evidence in the record as to what the financier, Bundy, said to appellee in June, 1897, when it is claimed she tendered and offered to pay the assessments and charges then or thereafter to become due from Graham, and said financier refused such tender and payment, is close and conflicting, to say the least. Assuming that the financier accompanied his refusal with a statement, as a reason for such refusal, that Graham was then insane, we do not think such statement sufficient upon which to predicate a waiver of any other ground of forfeiture of the certificate. The statement, if made, amounted simply to saying that Graham, by reason of his insanity, could not procure the certificate of good health necessary to his reinstatement; that having been suspended thirty days and being then insane, he was not in good health, and therefore ineligible to reinstatement. The instructions could not have been otherwise than prejudicial to appellant. The judgment is reversed and the cause remanded.

*Reversed and remanded.*