# First National Bank of Beecher, Illinois, Appellee, v. Joseph Wolf, Appellant.

## Gen. No. 23,150.

BILLS AND NOTES,' § 430*—*when maker may not show existence of oral agreement that renewal note should not be binding obligation.* Section 16 of the Negotiable Instruments Law (J. & A. ¶ 7655), cannot be construed to permit the maker of a note given as a renewal, the authenticity and delivery of which is admitted, to show that the note never became a valid note representing an obligation to pay because of an oral understanding that it should not be sued upon nor represent an obligation of the maker.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1917.. Affirmed.  Opinion filed November 30, 1917.  Rehearing denied December 15, 1917.  *Certiorari* denied by Supreme Court (making opinion final).

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

NEWMAN, POPPENHUSEN & STERN, for appellant; EDWARD R. JOHNSTON, of counsel.

BOWLES & BOWLES and FOREMAN, ROBERTSON & BLUMROSEN, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The First National Bank of Beecher, Illinois, brought suit in the Municipal Court against Joseph Wolf (appellant) on his two promissory notes, each for $2,500, and, upon the motion of the plaintiff, at the close of all the evidence, and the direction of the trial judge, the jury brought in a verdict of $5,500, upon which a judgment was entered in favor of the plaintiff.

On March 10, 1913, or some time prior thereto, the evidence being silent as to the exact date, one Strauss, who was a note broker and had negotiated the paper of the James E. Pepper Distilling Company, of which the defendant, Wolf, was president, gave the appellee two notes each for $2,500, signed by Joseph Wolf (appellant) and indorsed by him in blank. When they came due they were surrendered and canceled and new notes executed and delivered in their stead. Two such notes, one dated August 10, 1913, and one dated August 25, 1913, each in the sum of $2,500 and payable 4 months after date to the order of himself (appellee), were executed and delivered by the defendant and received by the plaintiff bank in place of earlier notes. At the time the notes of August 10 and August 25, 1913, were executed and delivered, the defendant admittedly had never had any business relations or negotiations with any of the officers of the plaintiff bank and all the notes of the defendant given to the bank up to and including August, 1913, represented direct obligations of Wolf to the bank, although as between Wolf and Strauss the latter was liable.

Subsequent to the maturity of the notes of August 10 and August 25, 1913, each for $2,500, Wolf executed and delivered to one Ehrhardt, cashier of the plaintiff bank, two new notes (the ones involved in this cause) each dated March 14, 1914, and each for the sum of $2,500 maturing 6 months after date, payable to the order of himself and indorsed by him. Those notes were delivered by Wolf upon the cancellation and surrender by the plaintiff bank of the former notes of August 10 and 25, 1913. At the time of their delivery a conference took place in the office of the defendant, at which Wolf, Strauss, White and Ehrhardt were present. As to just what conversation took place, the evidence is conflicting. White, Wolf's bookkeeper, and Wolf testified that Ehrhardt stated that Wolf would never be called on to pay the new notes. On the other hand, Ehrhardt (cashier of the plaintiff bank) testified that in a conversation some time in March, 1914, with Wolf, at which Strauss and White were present, he received from Wolf the two notes of March 14, 1914, in place of the two notes of August 10 and August 25, 1915, and that nothing was said between them to the effect that Wolf would never be called on to pay the new notes. The evidence, also, is conflicting concerning a conversation which took place on September 18, 1914, when Ehrhardt went with Strauss to Wolf's office. Wolf testified that Ehrhardt said: "We will take care—Ben (meaning Strauss) is about to take care of the notes and the Bank of Beecher is all right, they will take care of the notes"; that Ehrhardt said, "I have to have new notes because I expect the bank examiner there shortly and it would look bad to have a $5,000, past due note laying in the bank." "You will never be called upon to pay for this paper"; that finally he (Wolf) signed the notes. The testimony of White is substantially similar to that of Wolf. On the other hand, Ehrhardt testified

that there was practically no conversation between him and Wolf; that the conversation was chiefly between Strauss and Wolf; that he did not say anything about the bank examiner; that he did not say to Wolf that he would see to it that the plaintiff would not collect the notes from him.

On September 14, 1914, the defendant Wolf delivered to Ehrhardt, for the bank, the two notes of that date for $2,500, each, on which this suit has been brought. They were signed by Joseph Wolf, payable to his order and indorsed by him. One of the notes (which were surrendered) of March 14, 1914, had written upon it, "Paid by renewal" and the other, "Renewed," which words were written on the notes by Ehrhardt, the cashier at the bank, when he sent them back to Strauss. The interest on the Wolf notes was paid from time to time by Strauss. The evidence shows that the cashier, Ehrhardt, had not received any special or particular instructions from the bank directors or from the president of the bank in regard to the notes in question. At the time the notes came due, Strauss owed the bank $3,000 on another note which, as far as can be gathered from the evidence, had no relation whatever to the transaction with Wolf. On September 18, 1914, a letter was sent by the bank to Wolf, as a receipt for the two notes each for $2,500, each dated September 14th, one for 4 months and one for 5 months "for renewal of notes of Josp. Wolf of like amount which matured September 14, 1914." On February 16, 1915, the bank sent a written demand for the payment of the notes. No payment being made, this suit was brought.

It is claimed by the appellant that, under section 16 of the Negotiable Instruments Law (chapter 98, sec. 34, Hurd's Rev. St. 1916, J. & A. ¶ 7655) he is entitled to show that there was an oral understanding between him and appellee, that the notes which are sued upon were given on the condition that he (appel-

lant) would never be called upon to pay them, and *Straus v. Citizens State Bank of Elmhurst,* 164 Ill. App. 420, is cited as an authority. Upon an examination of the statute (section 16), we are of the opinion that it does not apply to the facts in this case. To admit that the notes were given as renewals and in place of preceding notes; to admit their authenticity and delivery, and yet to contend that they never became valid notes representing obligations to pay because there was an oral understanding that they never should be sued upon or represent obligations of the maker, is the equivalent of saying the notes never existed and is entirely different from the case where notes are delivered on condition, as e. g., that they shall not be evidence of an obligation until some condition precedent is complied with.

In determining, therefore, the critical question of the case, and that which is decisive of this appeal, whether the trial court erred in directing the jury to find a verdict for the plaintiff, it is our opinion, considering the evidence only as it may best support the contention of the appellant, and in the light most favorable to him, and disregarding all that is in conflict therewith, that the claim of appellee, both as a matter of law and of fact, was amply established and that in the direction of the verdict and the entry of the judgment, no error was committed.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*