## W. C. Handley, Appellant, v. Stuart Drum and Alice Drum, Appellees.

## Gen. No. 29,566.

1. NEGOTIABLE INSTRUMENTS—*admissibility as between original parties of parol evidence to vary terms of note.* Under the general rule that a party to a written contract may not contradict the terms of that contract by parol, a defendant in an action on a note, unconditional in its terms, could not show by parol, even as against the payee, that the parties had an understanding that the contract was in fact conditional.

2. NEGOTIABLE INSTRUMENTS—*right of makers to show by parol contemporaneous agreement for conditional delivery of note.* In an action against the makers of a promissory note they may show by parol that the note was never fully executed, that although it was signed by them there was merely a conditional delivery and that the condition has failed under the Negotiable Instruments Law, sec. 16, Cahill's .St. ch. 98, ¶ 36, which provides expressly that a negotiable instrument is incomplete and revocable until delivery, and that as between immediate parties conditional delivery, or one for special purposes, may be shown.

3. NEGOTIABLE INSTRUMENTS—*parol agreement to pay note from dividends only as one for conditional delivery.* An agreement that the note in question was not to take effect until sufficient dividends had been declared upon the shares of stock in consideration of which the note was given, to amount to the face value of the note, with interest, did not make the delivery of the note but

merely its payment conditional, and hence parol proof was not admissible to contradict the express terms of the note.

4. Appeal and error—*when Appellate Court may enter judgment on reversal.* Where, in the view of the Appellate Court, the plaintiff's motion for a directed verdict should have been granted but was denied in an action on a note in which a judgment by confession had been secured and the defendants were given leave to appear and defend, the judgment standing as security, judgment may be entered for plaintiff by the Appellate Court on reversal of the judgment of the trial court, with interest from the date when the judgment by confession was entered.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. Daniel P. Trude, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Reversed and judgment here. Opinion filed June 17, 1925. *Certiorari* denied by Supreme Court (making opinion final).

Robert W. Dunn, for appellant.

Fassett, Abbott & Hughes, for appellees; John E. Hughes, of counsel.

Mr. Justice Thomson delivered the opinion of the court.

The plaintiff Handley secured a judgment for $2,500 against the defendants, Stuart and Alice Drum, on a judgment note for that amount. Subsequently the defendants were given leave to appear and defend, the judgment to stand as security. They then filed an affidavit of merits, in which they set up, among other things, that the note sued upon was executed in part payment for 290 shares of the capital stock of the Eagle Battery Sales Corporation, and at the time it was executed it was stipulated and agreed between the parties "that the note was not to take effect until sufficient dividends had been declared," upon the stock, the shares "being then and there transferred by plaintiff to defendant Stuart Drum, to amount to the face value of said note with interest," and that it was further stipulated and agreed

between the parties "that the note should be paid only out of dividends declared by" the company.

In support of the defense thus set up, the defendant Stuart Drum testified that Handley owned 300 of the 600 shares of the capital stock of the Eagle Battery Sales Corporation, with which he, as well as the witness, had been connected and desired to sell his interest or the greater part of it; that "I had suggested to him that I would like to have a part interest in the business provided he would remain as the head of the company"; that they had certain negotiations which led to his agreement to pay Handley $4,000 for 290 shares of his stock; that "the talk was that I was to pay $1,500 cash and give a note signed by myself and wife due on or before twelve months, for $2,500." The evidence shows that Handley delivered the shares of stock which were the subject of this sale to Drum and the latter paid Handley the $1,500 in cash agreed upon and he and his wife, the two defendants, also signed the note here involved and Drum delivered it to Handley as part of the consideration for the stock. That note read as follows:

"$2,500.00.          Chicago, Ill., September 23, 1922. "On or before twelve (12) months after date, for value received, the undersigned promise to pay to the order of Wm. Handley at Southwest State Bank at its office in Chicago, Twenty-five Hundred and no/100 Dollars with interest at the rate of seven per cent per annum after maturity until paid  *  *  *  (with judgment clause).

"No. 1—Due Sept. 23—1923.

Stuart I. Drum,
Alice Y. Drum."

Stuart Drum further testified that in the course of his negotiations with Handley, "I told him I could pay $1,500 cash, and I would be willing to give him my note, but I could only pay it from the proceeds of the business. He said that would be acceptable if the note was secured by real estate signed by myself and wife." After thus acquiring this stock, Drum be-

came president of the company but he testified that it had never made any profit and at the time of the trial of this case it had ceased doing business.

The court instructed the jury that they must find the issues for the defendants if they believed from a preponderance of the evidence that "it was orally agreed by and between plaintiff and defendants prior to the execution of the note sued upon that the defendants would not be liable to pay said note except from the profits of the Eagle Battery Sales Corporation, and that said corporation did not make any profits." The jury found the issues for the defendants. The judgment theretofore entered for the plaintiff was vacated and judgment was then entered on the verdict for the defendants. To reverse that judgment the plaintiff has perfected this appeal.

In our opinion the instruction given by the trial court was not in accord with the law of this State. The promissory note was a written contract to pay $2,500, which was absolute in its terms. It is elementary that the defendants could not show by parol, even as against the payee of the note, that the parties had an understanding that the contract in fact was conditional. It is a fundamental part of the law of contracts, to which there are very few exceptions, that a party to a written contract may not contradict the terms of that contract by parol. But it is equally well established that such a party may show that the contract claimed to exist was in fact never fully executed,—that although it was signed by him, he never delivered it or that there was merely a conditional delivery and that the condition has failed. In so doing, the written terms of the contract are not varied by parol but the showing made is merely to the effect that the contract never was completely executed. Those principles apply to contracts entirely apart from negotiable instruments. *Northwestern Consol. Milling Co. v. Sloan*, 232 Ill. App. 266; *Ideal Tool & Manufacturing Co. v. Staff, post,* p. 624. They

have also been applied to negotiable instruments, as they were in *Schneider v. Lebanon Dairy & Creamery Co.,* 73 Ill. App. 612. After that and other similar cases were decided in this State, the Negotiable Instrument Law was adopted by our legislature. Section 16 of that Law (Cahill's St. ch. 98, ¶ 36) provides expressly that: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto," and further, that as between immediate parties, "the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument."

From what we have already said, it will be seen that the statement found in *Straus v. Citizens State Bank of Elmhurst,* 164 Ill. App. 420, to the effect that the section of the Negotiable Instrument Law, above quoted, "must be held to change the law in this State" is inaccurate. The principle announced in that section *is* a part of the law of contracts generally and was applied to the law of negotiable instruments in the decisions of Illinois courts before the Negotiable Instrument Law was adopted in this State. As pointed out in 8 C. J. 203, the provision of section 16 of that Act, as to the necessity for delivery, "is merely a legislative enactment of the common-law rule."

Applying the rule to the facts presented in the case at bar, it is quite apparent that counsel for the defendants appreciated the limits and extent of the rule, for in their pleadings they set up a conditional delivery. Their pleading was "that the note was not to take effect until sufficient dividends had been declared" upon the stock "to amount to the face value of said note with interest." But, in our opinion, it is equally apparent that the proof submitted did not make out the defense thus pleaded. That proof was not to the effect that the *delivery* of the note was conditional but that the parties had agreed that its *payment* was to be conditional and depend on the profits

to be derived from the stock in the way of dividends. In contending the contrary, counsel for the defendants urge that this was not a delivery of the note ''for the purpose of giving effect thereto'' as required by the statute before such an instrument can be considered complete and irrevocable. The evidence in this case fails to support that contention. The consideration for this note, together with the cash payment made, was 290 shares of stock of the company in which both these parties were interested. The note, together with the balance of the consideration, $1,500 in cash, was delivered to the plaintiff and the stock was delivered to the defendant Drum and was transferred on the books of the company to his name and by means of the voting of this stock the defendant became the president of the company and proceeded to manage its affairs. That being the situation, it must be held that the defendants delivered the note ''for the purpose of giving effect thereto,'' and even if, as the trial court put it in the instruction above quoted, the parties agreed prior to the execution of the note, ''that the defendants would not be liable to pay said note except from the profits'' of the company and the company made no profits, the defendants are nevertheless liable in this action because the alleged agreement did not impose a condition precedent to a complete delivery of the note but rather one which applied to the payment of the note and as this contradicted the express terms of the note, to be binding on the parties, it must have been made in writing and could not be shown by parol. *Hensley v. Mitchell,* 147 Ill. App. 161; *Schultz v. Meyer,* 181 Ill. App. 335; *Hesch v. Dennis,* 194 Ill. App. 663; *Weinstein v. Sprintz,* 234 Ill. App. 492; *First Nat. Bank of Beecher v. Wolf,* 208 Ill. App. 283; *Shinner v. Raschke,* 213 Ill. App. 324.

The case of *Bell v. McDonald,* 308 Ill. 329, cited by the defendants, is not applicable to the facts of the case at bar. In the case cited, there was a purely conditional delivery. The notes there involved were de-

livered as collateral security only. Their complete delivery was dependent upon the condition that the maker would fail to pay over money to be collected by him as the representative of the payee. The court held that "evidence that the instrument was not intended to take effect as a valid obligation until the occurrence of some future contingency is usually held admissible between the original parties * * * and those taking with notice. Such evidence, it is held, does not contradict the terms of the writing or vary its legal import but tends to show that it was never delivered as a present contract." In that case there was no consideration received by the maker of the notes at the time he made the conditional delivery of them. It was clearly the intention of the parties that such delivery was not "for the purpose of giving effect" to the notes and that they were never to become effective unless and until the maker defaulted in turning over the collections he was to make. That is not the situation presented in the case at bar, where the maker of the note sued upon received the stock, which was the consideration for the note, at the time the note was delivered and used the stock as his own. While the defendant pleaded a conditional delivery, his testimony tended to show an unconditional delivery but a contemporaneous agreement involving a condition attaching to the ultimate payment of the note. Such a condition may not be proved by parol.

In their brief filed in this court counsel for the defendants have emphasized the desirability of uniformity in the decisions of our different jurisdictions, with regard to the law of negotiable instruments, and they have called our attention to a number of decisions by the courts of other states, which they contend support the judgment appealed from and the principle set forth in the instruction given by the trial court to the jury, which we have already quoted. We have examined all these decisions carefully. Some of them, such as *Gleason v. Saunders,* 121 Mass. 436;

*Paulson v. Boyd,* 137 Wis. 241; *Vincent v. Russell,* 101
Ore. 672; *George v. Williams,* 27 Colo. App. 400; and
*Carpenter v. Maloney,* 138 App. Div. 190, 123 N. Y.
Supp. 61, may, in our opinion, be clearly distinguished
from the case at bar, on the facts. Among the other
cases cited are: *Smith v. Brown,* 50 Utah 27; *Gandy
v. Weckerly,* 220 Pa. 285; *Evans v. Freeman,* 142 N. C.
61. In *Smith v. Brown,* the defendant filed a long an-
swer involving a number of defenses, including fail-
ure of consideration. In the course of its opinion the
court referred to a statute of Utah requiring a lib-
eral construction of the averments of such an answer.
The court referred to the provision of the Negotiable
Instrument Law, providing that, as between the origi-
nal parties, it may always be shown that a promissory
note was delivered upon condition or that it was made
without consideration or that the consideration failed.
So far as a decision of the court in that case applied
the principle of conditional delivery to the facts which
were there presented, we are unable to follow it. In
referring to the *Gandy* case, counsel for defendants
quote a sentence to the effect that: "No principle is
better settled than that parol evidence is admissible
to show a verbal contemporaneous agreement which
induced the execution of a written obligation, though
it may vary or change the terms of the written con-
tract." The Pennsylvania court, in the *Gandy* case,
quoted that sentence from another Pennsylvania case,
*Juniata Building & Loan Ass'n v. Hetzel,* 103 Pa. St.
507. Standing alone, that sentence in our opinion is
inaccurate. As it was applied by the court, however,
the inaccuracy disappears. The sentence which fol-
lows the one above quoted announces that "therefore
it was competent for the defendant to prove, if he
could, that it was agreed before and at the time he
signed the bond that it should not be resorted to until
after the security of the mortgage was exhausted, and
that the security of the mortgage was lost through the
plaintiff's negligence." Although the first sentence

quoted is much broader in its application, the court confines it to a situation which unquestionably was one of conditional delivery. In the North Carolina case, *Evans v. Freeman,* a bond was involved which apparently recited its consideration upon its face, for by the terms of the bond the maker promised to pay $50, "being the purchase money for the right to sell an automatic stock feeder in Hartford county." The court held that it was proper for the maker to prove in defense of an action on the instrument that it was given upon the express agreement that the payment thereof was to be made out of the proceeds of the sales of the stock feeders and that if there were no such sales there was to be no payment. The court said that while it was true that, when parties reduced their agreement to writing, parol evidence was not admitted to contradict it or add to it, that rule applied only where the entire contract had been reduced to writing, but if only part of the contract was written and the other part was left in parol, it was competent to establish the latter by parol evidence, provided it did not conflict with what had been written. In the first place the decision of the court was inconsistent, in our opinion, for the part of the alleged agreement claimed to be in parol, which the court permitted the defendant to prove, did contradict the part of the contract which was in writing, namely, the bond or note, which was an absolute promise to pay the amount named therein. Furthermore, we think the decision is unsound. As this court recently had occasion to point out in *Ideal Tool & Manufacturing Co. v. Staff, supra,* it was held in *Thompson v. Libby,* 34 Minn. 374, that to allow a party to lay the foundation for parol evidence altering the terms of a written contract by parol testimony to the effect that only a part of the contract was reduced to writing, and then prove the part not reduced to writing by parol, would be to work in a circle and permit the very evil which the

rule prohibiting the alteration of a written contract, by parol, was designed to prevent.

For the reasons we have given the judgment of the municipal court must be reversed. The record shows that the plaintiff made a motion for a directed verdict at the close of the evidence, which was refused. In our opinion it should have been allowed. This court is, therefore, in a position to enter judgment for the plaintiff here. *Adam v. Columbian Nat. Life Ins. Co.*, 218 Ill. App. 54; *Nelson v. McCarthy*, 234 Ill. App. 639. The judgment of the municipal court is reversed and judgment for the plaintiff is entered here for $2,500, with interest at 5 per cent from October 5, 1923, the date when the judgment was entered for plaintiff by confession in the trial court, amounting in all to $2,712.56.

*Judgment reversed and judgment here.*

O'CONNOR, P. J., and TAYLOR, J., concur.