## The First State Bank of Mt. Carmel, Illinois, Appellee, v. Fred Holsen, Jr., Appellant.

1. WITNESSES—*competency to testify to conversation with decedent.* In an action by a bank against the maker of promissory notes, the maker is incompetent to testify to conversations with the president of the bank prior to the execution of the notes, the president having died after the making of the notes and prior to the beginning of the suit.

2. NEGOTIABLE INSTRUMENTS—*validity of agreement not to exact payment.* The maker of promissory notes in favor of a bank is not relieved from payment by a promise or agreement of the president of the bank with the maker not to collect the notes, where the bank has gone into liquidation after the making of the notes.

3. NEGOTIABLE INSTRUMENTS—*consideration of bank director's note to cover overdraft of president.* A promissory note of a bank director which is executed to the bank to wipe out an overdraft of the president, and which enables the president to retain his position as desired by the director, has a consideration.

4. NEGOTIABLE INSTRUMENTS—*liability on note given to bank to induce state certificate for stock increase.* The maker of promissory notes executed to a bank for a subscription to an increased issue of stock, and given at the instance of the president for the purpose of procuring the certificate of the state auditor for the increase, cannot, upon the liquidation of the bank, successfully defend a suit to collect on the ground that the president had agreed not to require payment.

Appeal by defendant from the Circuit Court of Wabash county; the Hon. C. H. MILLER, Judge, presiding. Heard in this court at the March term, 1927. Affirmed. Opinion filed May 14, 1927. Rehearing denied July 29, 1927.

P. J. KOLB and M. J. WHITE, for appellant.

W. S. WILLHITE, GEO. W. LACKEY and GEE & GEE, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

This appeal is prosecuted·from a judgment in favor of appellee and against appellant for the sum of $14,824.29, rendered by the circuit court of Wabash county in an action of assumpsit brought by appellee against appellant on seven promissory notes, designated as appellee's exhibits 1 to 7, inclusive. Appellant admits liability on exhibits 1, 2, 3 and 4, but denies liability on exhibits 5, 6 and 7, except as to $1,000.

Exhibit 5 consists of a note for $3,900, dated January 18, 1923, payable on demand. Exhibit 6 is a note for $1,875, dated March 3, 1920, due one year after date. Exhibit 7 is a note for $2,500, dated December 1, 1919, due one year after date, with a credit of $1,250 on the principal as of September 28, 1920.

The declaration is in the usual form. The defense to said last-mentioned exhibits, as set forth in appellant's pleas, is failure of consideration. A trial was had before the court without a jury, and a finding and judgment was rendered against appellant as above set forth.

The evidence on behalf of appellant as to the three last-mentioned notes was confined to his own testimony, the testimony of one Nelle V. Seiler, former assistant cashier of said bank, who identified certain bank books, stock books and other exhibits which were offered in evidence on the part of appellant.

The testimony referred to is to the effect that, some three or four days prior to the execution of said $3,900 note, Howard P. French, then president of appellee bank, called appellant on the 'phone and told him that he, French, was short $3,900 with appellee bank; that on the day said note bears date, French again called

him up and said, "If you don't help me out, I will lose my position. I am behind $3,900 with this bank, and I will take up the note in a few days." Appellant further testified that this conversation took place in the forenoon, and that he signed said note that afternoon; that shortly thereafter he ascertained that the records of said bank disclosed that his account had been charged on May 9, 1922, with a check for $3,900.16, and credited on May 17, 1922, by his note to appellee bank for $3,900. He further testified that he never authorized the charging of his account with said item of $3,900.16; that he did not draw a check on said bank for $3,900.16, and that he did not on May 17, 1922, make a note to said bank for said sum of $3,900; that he first learned of said note and of the charging of said item to him from R. R. Stansfield, then cashier of said bank, and further testified that his name was forged to said note of May 17, 1922, by the said Howard P. French.

Appellant's testimony in regard to exhibits 6 and 7 is to the effect that in the year 1919 the capital stock of appellee bank was being increased from $50,000 to $100,000; that Howard P. French, president of said bank, represented to appellant that he had persons who had agreed to subscribe for all of the stock, but that some of them were not in a position at that time to take over the same; that he agreed with appellant that if appellant would take 40 shares of said stock at $125 per share and give his notes therefor, said notes would be held by the bank and as the stock was sold, the proceeds therefrom would be credited on his notes, and that appellant would not be required to pay for the same.

Appellant further testified that he gave French two notes of $2,500 each on the above-named conditions, and in order that the State auditor would issue the certificate for the increase of said stock. He further testified that thereafter he concluded to purchase five

shares of said stock; that he gave his note for $625 therefor; that one of said $2,500 notes was taken up and a new note for $1,875 was given; that thereafter ten shares of said stock were sold to one Earl Leighty, and credit was given appellant on the other of said $2,500 notes, being exhibit 7, for $1,250; that he thereafter traded eight shares of said stock at $1,000, on a tractor. On the trial, appellant admitted liability on exhibit 6 for $1,000, leaving a balance on the principal of said note of $875, for which he denied liability.

The testimony on the part of appellee is to the effect that, in the regular course of business of said bank, appellant executed said $3,900 note on May 17, 1922, to take care of an overdraft of something over $3,800, and that exhibit 5 here sued on was given in renewal thereof. The witness Nelle V. Seiler testified on behalf of appellee that she was present at the American National Bank, where she was then working; that appellant came in and wanted to see the record of the $3,900 note; that Mr. Mitchell (president of the American National Bank) directed her to get said records and that she did so; that she heard appellant make the remark that he thought it had something to do with the Parkinson land. Mitchell testified that he had a conversation with appellant in the American National Bank with reference to the $3,900 note, and that appellant stated to him that it was connected with the Parkinson deal; "that when he went to settle with Mr. Parkinson, he thought he was going to accept some notes, but he declined to take the notes and had to give a check for $3,900, which overdrew his account. That was some time after we took the bank over, in the spring of 1924." The records of the bank disclose that dividends on the stock in question were passed to appellant's credit, and that he voted certain of said stock at the stockholders' meetings.

In rebuttal, appellant testified that if dividends had been passed to his credit, it was without his knowledge, and that he had not knowingly voted said stock.

The record discloses and it is conceded that appellee bank went into liquidation and was taken over by the American National Bank of Mt. Carmel, after the making of the notes here sued on.

On the trial, the court permitted appellant, over objection of appellee, to testify to certain conversations had, prior to the execution of exhibits 5, 6 and 7, with said Howard P. French, then president of appellee bank, said French having deceased after the making of said notes and prior to the beginning of this suit. However, in passing on the propositions of law submitted, the court held that appellant was an incompetent witness as to such conversations. This latter ruling is assigned as error by counsel for appellant.

French being an officer and agent of appellee bank at the time of the alleged conversations, appellant was not a competent witness as to such conversations, and the court rightly so ruled. *Helbig v. Citizens' Ins. Co.,* 234 Ill. 251–255; *Rothstein v. Siegel, Cooper & Co.,* 102 Ill. App. 600–601; *Grand Lodge, A. O. U. W. v. Young,* 123 Ill. App. 628–630.

But, even if it be held that appellant were a competent witness, appellee bank having gone into liquidation, a promise or agreement on the part of French as president of said bank, not to collect said notes of appellant, would not relieve appellant of his obligation to pay the same. *First National Bank of Beecher v. Wolf,* 208 Ill. App. 283; *Niblack v. Frank,* 209 Ill. App. 162; 3 R. C. L. 442; *Patton v. Shipman,* 244 Ill. App. 662.

It might be further observed that, even on the testimony of appellant, there was a consideration for the giving of said note of $3,900, in that it wiped out the overdraft of Howard P. French, and enabled French, according to the testimony of appellant, to hold his position as president of said bank. From the record, this would appear to have been a matter desired by appellant, who is shown to have been a director of said bank at the time.

The evidence in the record is further to the effect that said $3,900 note, exhibit 5, was given to said bank in the regular course of business. Appellant, through the witness Nelle V. Seiler, proved that the records of said bank were kept in the usual course of business, and, after having made such proof, offered in evidence said note of $3,900, dated May 17, 1922, together with the charge made against his account of $3,900.16, so that, with this evidence in the record without any competent evidence disputing the same, appellant is in a poor situation to contend that he is not liable on the note for $3,900, exhibit 5 here sued on.

If we are correct in our holding that appellant was not a competent witness in his own behalf, the evidence wholly fails to show but that said notes, exhibits 6 and 7, were given to appellee bank in the regular course of business. However, even if it be conceded that appellant was competent to testify in his own behalf, the defense sought to be made to said notes, exhibits 6 and 7, cannot be sustained under the authorities.

The action of appellant in giving said notes, as testified to by him, for the purpose of procuring the certificate of the State. auditor, was not only a fraud against the State, but was also a fraud as against those subscribers who bona fide subscribed for said stock and paid therefor, and it was a fraud on persons dealing with said bank and relying on the bona fides of the subscriptions made to said bank. That being true, appellant cannot successfully defend on a suit to collect thereon.

"Where notes or other securities have been executed to a bank for the purpose of making an appearance of assets, so as to deceive the examiner and enable the bank to continue buiness, although the circumstances may have been such that the bank itself could not have collected the securities, it has been held that the re-

ceiver, representing the creditors, could maintain the action, and the makers were estopped, upon the insolvency of the bank, to allege want of consideration." *Golden v. Cervenka,* 278 Ill. 409–427; *Niblack v. Farley,* 286 Ill. 536–540.

While this suit is not brought by the receiver of said bank, yet it is conceded by appellant that said bank has gone into liquidation. Therefore, the creditors of appellee bank would be directly affected by appellant's failure to pay the notes sued on, and to allow him to escape liability thereon would amount to a fraud on said creditors.

Counsel for appellant cite and rely on *McNulta v. Corn Belt Bank,* 164 Ill. 427. In that case the court at page 450 says:

"The effect of the resolution, and of what was done under it, was to release the original subscribers to the capital stock from the obligation to pay their subscriptions. When the $100,000.00 was paid in, the subscriptions appeared to be thereby discharged, but when it was taken out nothing remained in the bank to show payments of the subscriptions. Until sales were made of the stock, the bank had no funds whatever, all pretended payments upon the subscriptions being withdrawn. 'It has been settled by very numerous decisions, that the directors of a company are incompetent to release an original subscriber to its capital stock, or to make any arrangement with him by which the company, its creditors, or the State, shall lose any of the benefit of his subscription. Every such arrangement is regarded in equity, not merely as *ultra vires,'* but as unjust to the other stockholders, to the public and to the creditors of the company. (*Burke v. Smith,* 16 Wall. 390; *Melvin v. Lamar Ins. Co.,* 80 Ill. 446; *Bedford Railroad Co. v. Bowser,* 48 Pa. St. 29; *Osgood v. King,* 42 Iowa 478.)"

It would seem that this case is a direct authority against appellant's contention.

In *Horwich v. Davis,* 220 Ill. App. 40, at page 45 the court says:

"The receiver of a defunct bank when attempting to marshall the assets of such bank for the benefit of its creditors is in law an innocent holder of such assets. Neither is it available to plaintiff in error as a defense to the note in the hands of the receiver that the officers of the Ashland-Twelfth State Bank knew of the fraudulent character of the note and of the secret understanding as to its negotiability, because, if true, the purchase of it by that bank would be in fraud of the rights of its creditors made possible by the original fraud of plaintiff in error in giving the note for the purpose recited in the affidavit. To establish such a defense it would be necessary to prove that the note was given for the unlawful and fraudulent purposes already mentioned, and courts will not listen to defenses based on the positively unlawful acts of a defendant." Citing *Goodrich v. Tenney,* 144 Ill. 422–430; *Wright v. Cudahy,* 168 Ill. 86; *Pietsch v. Pietsch,* 245 Ill. 454–459; *Golden v. Cervenka, supra; Niblack v. Farley, supra.*

While counsel for appellant went into detail in their criticism of the holdings of the court on the propositions of law ruled on by the court, it will not be necessary for us to discuss the same, further than to say that the holdings of the court are substantially in keeping with the rules of law laid down by this court herein.

We are clearly of the opinion that the court did not err in finding the issues for appellee, and in rendering judgment against appellant on the three notes, exhibits 5, 6 and 7, as well as on the notes on which appellant concedes liability.

For the reasons above set forth, the finding and judgment of the trial court will be affirmed.

*Judgment affirmed.*