The First National Bank of Granite City, Illinois, Appellant, v. Charles L. Draper, Appellee.

Opinion filed June 9, 1932.

JOSEPH C. STEELE and WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

R. W. GRIFFITH and WESLEY LUEDERS, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Madison county in bar of the action and for costs in a suit in assumpsit on a judgment note.

The First National Bank of Granite City, appellant, on September 24, 1930, obtained judgment by confession against the appellee, Charles L. Draper, in the circuit court of Madison county for $4,530.35.

On motion of appellee, the judgment was thereafter opened, appellee given leave to plead, the judgment to stand as security and a trial had on the merits. The jury found in favor of the appellee, motion for new trial was denied and judgment rendered in favor of appellee in bar of action and for costs.

Appellee filed a plea of *non assumpsit* and four special pleas. The first special plea alleged that the execution of the note sued upon was made solely for the accommodation of the appellant bank and without any valuable consideration.

The second special plea alleged that the execution of the note was made solely for the accommodation of appellant bank and Bethel & Son, a corporation, at the request of appellant and without a valuable consideration.

The third special plea alleged that prior to the execution of the note, Bethel & Son, who were indebted to appellant in the sum of about $20,000, sought an additional loan of $5,000 from appellant; that appellant feared such additional loan would not meet the approval of the bank examiner; that appellee at the special instance and request of appellant became accommodation maker of a $5,000 note for the accommodation of appellant bank; that renewal notes were executed from time to time; that appellant accepted the note from appellee as accommodation maker, and not otherwise; that appellee was not indebted to said bank

or to Bethel & Son and received no valuable consideration for said note.

The fourth special plea alleged similar matters and that there was a conditional delivery of the note in question; that the condition had totally failed and that thereby appellee was released and discharged from payment.

The substantial facts show that in July, 1928, a certain contracting firm in Granite City, by the name of Bethel & Son, was indebted to appellant bank in the approximate sum of $20,000 on unsecured notes. Bethel & Son had under construction two rather large building contracts with the State of Illinois, one at Kankakee and one at Charleston, upon which the State was withholding a portion of the contract price. The contractors were needing additional funds to carry on the work and to meet their payrolls and applied to appellant bank for an additional loan of $5,000. They were told by Guy L. Tetherington, the president of appellant bank, that the amount of their indebtedness equaled the limit which the bank was permitted to loan any one borrower, and that the loans to Bethel & Son had been criticized by the bank examiner. From this point on the testimony is in conflict. Bethel testifies that in conference with Tetherington the latter suggested getting someone else to sign the note and that Bethel then suggested the name of appellee.

Tetherington testified that he refused to make the additional loan to Bethel & Son, and that after the refusal Bethel wanted to know if he would make the loan to appellee, which Tetherington agreed to do. The appellee, Charles L. Draper, was then brought into the bank for conference with Bethel and Tetherington. He testifies that in this conversation Tetherington was asked by Bethel to explain the situation the construction company was in regarding the raising of more capital to complete their building con-

tracts with the State. Thereupon Tetherington told Draper about the state of Bethel & Son's bank account; that he had made investigations at Springfield through the State officials and ascertained the amount of money necessary to complete the State contracts; that the appellant had already loaned Bethel & Son all they were allowed to loan; that there would be plenty of money coming from the contracts to pay off all the material bills and subcontractors, and also enough to pay off the loans made at appellant bank; that the only way appellant could loan Bethel any further sum would be to get somebody else to sign the note, as the bank examiner wouldn't allow the appellant to use Bethel's name on any further paper; that if he, Draper, would sign the note there would be no liability attached to it and no interest for him to pay; that the money coming in from the State funds, after the subcontractors and material bills were paid off, would be applied to pay off the Draper note.

Draper further testified that, after this explanation and assurances from Tetherington, he signed the note. He received none of the $5,000; he renewed the note several times, but never paid any interest; never saw the cashier's check for $5,000 issued in his name at the time the note was executed; never indorsed the check; did not have an account with appellant bank and upon inquiry several times when the note was renewed was told that payment from the State jobs had been delayed.

Appellee is corroborated by Joseph Bethel as to the conversation at the bank. Bethel states further that during the conference Draper said to Tetherington, "Well, now, if I sign this note, Mr. Tetherington, will you see that it is paid from the first funds received from the State jobs?" And Mr. Tetherington said that he would, and that the note would be satisfied from the first funds received from the State after the material bills and labor bills had been paid.

Tetherington on the witness stand insisted that he made it clear that the note would be the obligation of appellee alone and denied telling Draper that if he signed the note he would never be called upon to pay it and would not be liable on it and also denied stating that he would see that the first funds coming to the bank from the State contracts would be applied in payment of the Draper note. He is corroborated in part by the testimony of Nathan Fleischman, chairman of the board of directors of the appellant bank.

After the note was signed by appellee it was given to the cashier of the bank, who then drew a cashier's check on appellant for $5,000, payable to the order of appellee. This check was indorsed by Bethel writing the name ''Charles L. Draper'' on the back and then he delivered the check back to the bank and Bethel & Son were given credit for the amount of same.

Appellant had made arrangement with the State so that all checks to Bethel & Son, for work done on the State contracts, were forwarded to the appellant bank, although payable to the contractors. A large part of the indebtedness due the bank from Bethel & Son was paid from these checks and $1,000 paid on the Draper note. Later on the appellant bank was consolidated with the Granite City National Bank and demand made on Draper to pay the note.

It is the contention of appellant that the loan in question was made to appellee, Draper; that the obligation was his direct obligation and that he was the party of primary liability thereon. Under these circumstances appellant insists it was error to permit oral proof by appellee as to the mode of payment of the note, or that he was not to be liable on the note and would not be called upon to pay it, and that the admission of such proof was only an attempt to change and qualify the unconditional written promises by a contemporaneous parol agreement, in violation of the general

rule that an instrument on its face cannot be shown by parol to be conditional.

We do not feel that the cases cited by appellant fit the facts or control the questions in this case. In the case of *Handley v. Drum,* 237 Ill. App. 587, the court said that while the defendants had pleaded a conditional delivery of the note in question the proof submitted did not make out the defense thus pleaded. In the case of *First Nat. Bank of Beecher v. Wolf,* 208 Ill. App. 283, the only attempt to show conditional delivery was on the renewal of the notes in March, 1914, and no evidence was sought to be introduced of any conversation or evidence of a conditional delivery of the original note executed in March, 1913. Other cases cited by appellant are as readily distinguished from the facts of this case.

Section 16 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 36, provides as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument."

In *Bell v. McDonald,* 308 Ill. 329, in commenting upon the rule insisted upon by appellant the court said, "While this is recognized rule of general application, yet evidence that the instrument was not intended to take effect as a valid obligation until the occurrence of some future contingency is usually held admissible between the original parties and between them and

those taking with notice. Such evidence, it is held, does not contradict the terms of the writing or vary its legal import but tends to show that it was never delivered as a present contract. The possession of a contract unexplained may be presumptive evidence of its delivery, and under such circumstances no alteration of the terms of the contract could be shown, but until the delivery the writing is inoperative, and the delivery upon condition does not make it operative until the condition has been complied with. Evidence of such conditional delivery does not alter or vary the contract." *Straus v. Citizens' State Bank of Elmhurst,* 164 Ill. App. 420, is to the same effect.

In this case we believe the jury were entirely warranted in finding from the testimony that the appellant bank was more than ordinarily interested in securing an additional loan for Bethel & Son, and that the president of the bank, Tetherington, by suggestion outlined the plan that was carried out; that the appellee, Draper, signed the note but that it was never delivered for the purpose of giving effect thereto as a valid, unconditional promissory note. We think the facts quite clearly show that the president of appellant bank agreed with appellee that he should not be held liable upon his note and that the same should be paid out of funds received by the bank from the State of Illinois, payable to Bethel & Son, and the appellant cannot recover on this note because of its violation of the terms of said agreement.

The judgment of the circuit court of Madison county is therefore affirmed.

*Affirmed.*